[No. S159319. May 14, 2009.]

GERARD STE. MARIE, Plaintiff and Respondent, v.
RIVERSIDE COUNTY REGIONAL PARK AND OPEN-SPACE
DISTRICT, Defendant and Appellant;
MT. SAN JACINTO COMMUNITY COLLEGE DISTRICT, Real Party in
Interest and Respondent.

## COUNSEL

Joe S. Rank, County Counsel, Pamela J. Walls, Assistant County Counsel, Patti F. Smith, Deputy Counsel; Reed Smith, Paul D. Fogel, Dennis Peter Maio; and Anita C. Willis for Defendant and Appellant.

Steven M. Woodside, County Counsel (Sonoma), Phyllis C. Gallagher, Deputy County Counsel; Ted C. Radosevich and Carol R. Victor for East Bay Regional Park District, Midpeninsula Regional Open Space District, Sonoma County Agricultural Preservation and Open Space District, Marin County Open Space District, Monterey Peninsula Regional Park District and Napa County Regional Park and Open Space District as Amici Curiae on behalf of Defendant and Appellant.

Gerard Ste. Marie, in pro. per., for Plaintiff and Respondent.

No appearance for Real Party in Interest and Respondent.

## OPINION

**WERDEGAR, J.**—We address today a question of statutory interpretation, the answer to which will have a profound effect on how regional park and open space districts can manage their real property holdings. The dispute in this case centers on a purported conflict between Public Resources Code[1] section 5565, which suggests real property is deemed "dedicated" for park or open space purposes at the moment of acquisition by a district, and section 5540, which suggests land is "actually dedicated" only after a district's board of directors adopts a formal resolution for such purposes. The difference is important because a district's ability to sell or otherwise convey land "actually dedicated" under section 5540 is limited by substantial statutory restrictions. The Court of Appeal below held that certain real property owned by defendant Riverside County Regional Park and Open-Space District (hereafter the Riverside District or the District) was—immediately upon acquisition—deemed by section 5565 "actually dedicated" for park or open space purposes within the meaning of section 5540, despite the absence of

---

[1] All further statutory references are to this code unless otherwise stated.

any affirmative action by the District's board of directors so designating the property. Accordingly, the appellate court agreed with the trial court that the District's proposed transfer of the land was subject to the restrictions set forth in section 5540. Because the Court of Appeal misconstrued the interplay between sections 5540 and 5565, we reverse.

## FACTS

The Legislature first authorized the creation of regional park districts in 1933 "for the purpose of acquiring, improving, and maintaining parks, playgrounds, beaches, parkways, scenic drives, boulevards and other facilities for public recreation." (Stats. 1933, ch. 1043, p. 2664, italics omitted.) This act was later codified in 1939 as section 5500 et seq. (Stats. 1939, ch. 94, p. 1217) and then expanded in 1975 to include regional open space districts as well as combination use districts, called regional park and open space districts (§ 5500, as amended by Stats. 1975, ch. 813, § 2, p. 1846). Such districts now number eight in all and stretch from Los Angeles County in the south to Napa and Sonoma Counties in the north.[2] The oldest and most developed district, and the one envisioned by the authors of the original legislation in 1933, is the East Bay Regional Park District. Created in 1934, it spans Alameda and Contra Costa Counties and now encompasses 65 regional parks, over 97,000 acres of land, and over 1,000 miles of trails. Five additional districts have been legislatively authorized but have yet to be created. Today, existing regional park and/or open space districts in the state comprise several dozen regional parks and tens of thousands of acres of open space areas.

The Legislature authorized the creation of the Riverside District in 1993. (§ 5541.2.) The enabling act provided the District "may plan, acquire, preserve, protect, and otherwise improve, extend, control, operate, and maintain open-space areas, greenbelt areas, wildlife habitat areas, and regional parks for the use and enjoyment of all the inhabitants of the district." The same statute further provides the District "may select, designate, and acquire land, or rights in land, within or without the district, to be used and appropriated for those purposes." The District exercised these statutory powers in 1995, acquiring approximately 161 acres of land in the Wildomar

---

[2] In support of defendant Riverside District, we have received a joint amicus curiae brief from the East Bay Regional Park District, the Midpeninsula Regional Open Space District, the Sonoma County Agricultural Preservation and Open Space District, the Marin County Open Space District, the Monterey Peninsula Regional Park District, and the Napa County Regional Park and Open Space District. Of the eight existing park or open space districts in California, only the district in Los Angeles County (§ 5506.9) is unrepresented before this court, no doubt because, as amici curiae assert, the Los Angeles County Open Space and Recreation District does not hold title to any real property but acts merely as a funding source for parks administered by other entities.

area[3] of Riverside County from the Potter Family Trust. Although the land's appraised value was $1.37 million, the District paid only $950,000 for it and accepted the remaining $420,000 as a gift from the trust. At issue in the present proceeding is an approximately 80-acre portion of this acquisition (hereafter referred to as the Wildomar property). Although the District acquired and holds legal title to the Wildomar property, the Riverside County Board of Supervisors, which sits as the District's board of directors (§ 5538.7), never adopted a resolution formally dedicating the property as a regional park, a regional open space, or a combination of a regional park and open space area. All parties concede the Wildomar property consists of land "in an essentially unimproved state."

In 2003, the District's board of directors entered into an option agreement with the Mt. San Jacinto Community College District, agreeing to convey the Wildomar property to the college district for construction of a new community college campus. The proposed sale of the Wildomar property was neither approved by the District's voters nor by the state Legislature following a supermajority vote by the District's board of directors. Plaintiff Gerard Ste. Marie, a Wildomar and Riverside County resident, thereafter filed the petition for a peremptory writ of mandate that forms the basis of the present proceeding, contending the proposed conveyance of the Wildomar property would violate section 5540 and thus "there exists a real and immediate danger that [the District] will commit irreparable harm by conveying and disposing of the Wildomar property in direct contravention [of] the prohibitions of state law."

During the pendency of the trial court proceedings, the District unsuccessfully sought a joint resolution in the state Legislature that would have authorized the sale of the Wildomar property to the Mt. San Jacinto Community College District. The trial court thereafter directed issuance of a peremptory writ of mandate, prohibiting sale of the Wildomar property until such time as the District complies with the requirements of section 5540; that is, until it obtains voter approval or legislative authorization for the sale. The Court of Appeal affirmed, and we granted review.

## DISCUSSION

The dispute in this case arises from the potential confusion generated by the use of the word "dedicated" in two different sections of the Public Resources Code, in light of the substantial restrictions the code imposes on the sale of park district property that has been "actually dedicated" for park or open space purposes. Thus, section 5540 provides in pertinent part: "A

---

[3] Wildomar is located north of Temecula and just south of Lake Elsinore.

district may not validly convey any interest in any real property *actually dedicated* and used for park or open-space, or both, purposes without the consent of a majority of the voters of the district voting at a special election called by the board and held for that purpose. [But] . . . consent need not first be obtained for a conveyance of any real property if the Legislature, by concurrent resolution, authorizes a conveyance after a resolution of intention has been adopted by at least a two-thirds vote of the board of directors of the district, specifically describing the property to be conveyed." (Italics added.)

Invoking these restrictions on conveyance, plaintiff relies on section 5565, which provides in pertinent part that "[t]he legal title to all property acquired by the district under the provisions of this article *shall immediately* and by operation of law vest in the district, and shall be held by the district in trust for, *and is dedicated and set apart for*, the uses and purposes set forth in this article." (Italics added.) The Court of Appeal agreed with plaintiff that this sentence from section 5565 means that real property is deemed "dedicated" for park or open space purposes at the moment a district legally acquires title to the property. Thus, according to plaintiff and the appellate court, the Wildomar property was "actually dedicated" for park purposes when the District took title to the land in 1995, and consequently the District cannot sell the property to the Mt. San Jacinto Community College District without voter or legislative approval.

By contrast, the District contends the "actual[] dedicat[ion]" referred to in section 5540 differs from the "dedication" referred to in section 5565, and that because the District's board of directors has not adopted a resolution actually dedicating the Wildomar property for park or open space purposes, the land is not subject to the restrictions on conveyance set forth in section 5540. Thus, the District, supported by amici curiae, argues an interest in real property is not "actually dedicated" under section 5540 until the District's board of directors formally adopts a resolution of dedication.

■ As with all questions of statutory interpretation, we attempt to discern the Legislature's intent, "being careful to give the statute's words their plain, commonsense meaning. [Citation.] If the language of the statute is not ambiguous, the plain meaning controls and resort to extrinsic sources to determine the Legislature's intent is unnecessary." (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 919 [129 Cal.Rptr.2d 811, 62 P.3d 54] (*Kavanaugh*).) Here, section 5565's language, stating that land for which a park district holds legal title "*is dedicated* and set apart for, the uses and purposes set forth in this article" (italics added), arguably could mean that such land was "*actually dedicated* and used for park or open-space" purposes under the meaning in section 5540 (italics added). ■ The same word ("dedicated") is used in both statutes, and one

rule of statutory construction specifies that a word given a particular meaning in one part of a law should be given the same meaning in other parts of the same law. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 643 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)

■    On closer inspection, however, it becomes clear this axiom of construction does not control here because, although the same word is used in both statutes, the Legislature did not use it in the same way. Section 5565 states that land is "dedicated," whereas section 5540 imposes conveyance restrictions on land that is "actually dedicated." Although plaintiff argues these two usages of "dedicated" amount to the same thing, to so conclude would render surplusage the important qualifying word "actually," violating the rule of statutory construction that courts should, if possible, accord meaning to every word and phrase in a statute so as to better effectuate the Legislature's intent. (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 991–992 [73 Cal.Rptr.2d 682, 953 P.2d 858]; see also *People v. Thompson* (2006) 38 Cal.4th 811, 833 [43 Cal.Rptr.3d 750, 135 P.3d 3] (dis. opn. of Werdegar, J.) ["[t]he qualifiers are important"].) To find use of the word "dedicated" in both statutes dispositive would thus be an overly superficial interpretation.

■    We must of course read statutes as a whole so that all parts are harmonized and given effect. (*Kavanaugh, supra,* 29 Cal.4th at p. 919.) Doing so reveals that the two instances discussed above are not the only times the word "dedicated" is employed in the relevant statutes. Thus, although the limitations on the sale of property in section 5540's third paragraph were included in the original version of the statute in 1939, that section's second paragraph was added in 1985. (Stats. 1985, ch. 371, § 1, p. 1529.) That second paragraph provides: "Lands subject to the grant of an open-space easement executed and accepted by the district in accordance with this article are enforceably restricted within the meaning of Section 8 of Article XIII of the California Constitution. An easement or *other interest in real property may be dedicated* for park or open-space purposes, or both, *by the adoption of a resolution by the board of directors,* and any interest *so dedicated* may be conveyed only as provided in this section." (§ 5540, italics added.)

■    A park district like the Riverside District acts through its board of directors (§§ 5527, 5593),[4] which by statute "shall act only by ordinance,

---

[4] Section 5527 provides in part: "The government of each district shall be vested in a board of five or seven directors . . . ." Section 5593 provides: "All matters and things necessary for the proper administration of the affairs of districts which are not provided for in this article shall be provided for by the board of directors of the district."

resolution, or a motion duly recorded in the minutes of the meeting" (§ 5547). Because land held in fee simple is an "other interest in real property," section 5540 directs that land held in fee simple "may be dedicated . . . by the adoption of a resolution by the board of directors . . . ." But if plaintiff is correct that under section 5565 real property is deemed dedicated for park or open space purposes at the moment of acquisition, the alternative dedication procedure set forth in section 5540's second paragraph (i.e., dedication by adopting a resolution) would be unnecessary and superfluous. This anomaly strongly suggests plaintiff's proposed interpretation of section 5565 is incorrect and that the Legislature could not have intended that real property should be deemed actually dedicated at the moment a district acquires it.

Attempting to avoid this inconsistency, plaintiff urges us to adopt a different interpretation of section 5540's second paragraph, contending a reasonable reading of this paragraph, including a consideration of its "grammatical structure," reveals the amendment "primarily concerned easements." We agree the 1985 amendment, describing dedication by resolution, *primarily* concerned easements, but disagree with plaintiff's further, implicit argument that the amendment *solely* concerned easements.[5] Although both sentences of the paragraph added to section 5540 in 1985 indeed mention easements, the passage in question refers to more than easements; it refers to "[a]n easement *or other interest in real property* . . . ." (Italics added.) Thus, the statutory amendment, on its face, embraces more than just easements.

■ Despite this plain language, plaintiff contends it is "obvious" from the provision's legislative history that section 5540's second paragraph is limited to easements. "In order to ascertain a statute's most reasonable meaning, we often examine its legislative history." (*Kavanaugh, supra,* 29 Cal.4th at p. 920.) But resort to a statute's legislative history is appropriate only if the statute is reasonably subject to more than one interpretation or is otherwise ambiguous. Here, section 5540's reference to "[a]n easement *or other interest in real property*" (italics added) is clear on its face. But even were we to assume the provision is ambiguous (see *Alford v. Superior Court* (2003) 29

---

[5] Had the Legislature been concerned solely with how a district acquires and dedicates easements, it would have been simpler to amend section 5565 to say: "The legal title to all property <u>including easements</u> acquired by the district under the provisions of this article shall immediately and by operation of law vest in the district, and shall be held by the district in trust for, and is dedicated and set apart for, the uses and purposes set forth in this article." (Underscored text added.) That the Legislature instead chose to amend section 5540 and specify that easements should be dedicated by having a district's board of directors adopt a resolution of dedication strongly suggests the meaning of the phrase "actually dedicated" in section 5540's third paragraph refers to this procedure.

Cal.4th 1033, 1059 [130 Cal.Rptr.2d 672, 63 P.3d 228]), the legislative history would not support plaintiff's proposed interpretation.[6]

As plaintiff observes, the available legislative documents indicate the 1985 amendment to section 5540 was intended to address a problem concerning how park districts could hold and dispose of easements. According to the Office of Local Government Affairs, the legislation then known as "AB 2253" was "sponsored by the Midpeninsula Regional Open-Space District." (Off. of Local Government Affairs, Enrolled Bill Rep. on Assem. Bill No. 2253 (1985–1986 Reg. Sess.) July 23, 1985, p. 2.) Although districts were authorized to purchase and dispose of real property, "these districts may also acquire easements; such as a trail easement across private property, or an easement on private property on which the land is declared an open-space area, and the public has no right[] to use. The sponsor states that current law is not clear whether the above easements can be dedicated, as park-owned lands are currently dedicated. [¶] AB 2253 would clarify that easements may be dedicated by park and open-space districts." (*Ibid.*) That the 1985 amendment to section 5540 was intended to address a perceived problem concerning the acquisition and management of easements is further confirmed by the bill analysis provided by the Department of Parks and Recreation, dated April 18, 1985, which states that "[e]xisting law (PRC 5540) authorizes regional park and open-space districts to 'dedicate' real or personal property for district purposes. [¶] According to the sponsor, there is no specific authority for local park districts to dedicate 'easements' for park and open-space purposes. The proponents contend this bill would clearly establish this authority, eliminate the law's existing ambiguity and, thus, avoid 'future' problems with legal interpretations." (Dept. of Parks and Recreation, Analysis of Assem. Bill No. 2253 (1985–1986 Reg. Sess.) Apr. 18, 1985, p. 1.) This view is essentially repeated in the analyses of the Senate Committee on Natural Resources and Wildlife, July 7, 1985, page 2, and the Senate Rules Committee, Office of Senate Floor Analyses, July 11, 1985, pages 1–2.

But that is not the end of the story. The aforementioned Department of Parks and Recreation bill analysis, page 2, also includes this comment: "This bill would 'clarify' local park district authority to dedicate easements *without substantially changing the district's current dedication authority for other property.*" (Italics added.) This suggests the Legislature understood that under the then extant state of the law, a park district's "current dedication authority" for real property involved some affirmative act (such as adoption of a resolution by the board of directors) and did not happen automatically merely upon passage of legal title from a seller to a district.

---

[6] The Court of Appeal granted the District's first request for judicial notice, which contained the legislative history of this provision. Plaintiff recently filed a request for judicial notice of this same material in order to ensure this court considers it. We grant this request.

That this must have been the Legislature's understanding is further underscored by other comments in the available legislative documents. For example, the enrolled bill report of the Office of Local Government Affairs states that "[a]ccording to the sponsor, current law allows park[] and open-space districts to purchase land and dedicate such land for park or open-space purposes. *Once* the land has been so dedicated, the district may convey or dispose of this land" only by majority vote or legislative resolution. (Off. of Local Government Affairs, Enrolled Bill Rep. on Assem. Bill No. 2253 (1985–1986 Reg. Sess.) July 23, 1985, p. 2, italics added.) Use of the word "once" suggests that mere acquisition of land does not suffice for dedication, but that some later affirmative act is required. The same document notes that "current law is not clear whether . . . easements can be dedicated, *as park-owned lands are currently dedicated*." (*Ibid.*, italics added.)

Thus, nothing in the history of the 1985 amendment to section 5540 suggests the Legislature understood it was creating a different, alternative means of dedicating real property, applicable solely to easements. By adding language specifying that easements could be dedicated by the adoption of a resolution by a district's board of directors, it instead appears the Legislature understood it was clarifying that easements should be dedicated "as park-owned lands [were] currently dedicated," that is, by a park district's board of directors adopting a formal resolution dedicating the easement for park or open space purposes. Although plaintiff suggests the statutory scheme can embrace two methods of dedicating interests in real property, nothing in the history of section 5540 or the 1985 amendment thereto suggests either a legislative intent to create such a dual system or a possible purpose for maintaining one.

■ The District's interpretation of sections 5540 and 5565 is thus supported by the plain language and the legislative history of those statutes, as well as that of the 1985 amendment to section 5540. The District's interpretation is further supported by the interpretation of those statutes by the various districts themselves (see *ante*, at p. 286, fn. 2), as evidenced by their long-standing internal practices. "[C]ourts must give great weight and respect to an administrative agency's interpretation of a statute governing its powers and responsibilities. [Citation.] Consistent administrative construction of a statute, especially when it originates with an agency that is charged with putting the statutory machinery into effect, is accorded great weight." (*Mason v. Retirement Board* (2003) 111 Cal.App.4th 1221, 1228 [4 Cal.Rptr.3d 619].) Significant factors to consider include whether the administrative interpretation has been formally adopted by the agency or is instead in the form of an advice letter from a single staff member, and whether the interpretation is long-standing and has been consistently maintained. (*Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1013 [32 Cal.Rptr.3d 89, 116 P.3d 550]; see also *Yamaha Corp. of America v. State Bd. of Equalization*

(1998) 19 Cal.4th 1, 12–15 [78 Cal.Rptr.2d 1, 960 P.2d 1031].) Such deference is also appropriate for practical reasons: "When an administrative interpretation is of long standing and has remained uniform, it is likely that numerous transactions have been entered into in reliance thereon, and it could be invalidated only at the cost of major readjustments and extensive litigation." (*Whitcomb Hotel, Inc. v. Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233].)

Amici curiae state: "Since their inception, the amici districts have interpreted the 'actually dedicated' language in section 5540 as requiring an affirmative act of dedication by their respective boards separate and apart from the board's decision to acquire the real property interest. This ensures that the district's board has had a meaningful opportunity to assess the wisdom of such a dedication. All of the amici districts make conscious choices about dedicating interests in real property acquired with taxpayer dollars; some do so pursuant to carefully written policies that explain the considerations and process involved in an act of dedication. [Citation.] [¶] Consistent with their interpretation of 'actually dedicated' in section 5540, the amici districts have operated with the understanding that they were free to convey any real property or interest in real property that had not yet been 'actually dedicated' by board resolution, so long as the proceeds of the sale were used for the [1933] Act's purposes." (See also § 5563 [authorizing district to sell surplus property "subject to the provisions of Section 5540" so long as the sale proceeds are used for district purposes].)[7]

This view is supported by East Bay Regional Park District Resolution No. 4500, adopted January 22, 1974, in which that district recognized the difference between dedicated and undedicated district land, and explained that "[n]ormally undedicated lands within the [d]istrict's boundaries will be held *for future dedication* to park or open space purposes, *but only after the*

---

[7] We grant amici curiae's second request for judicial notice, filed in this court on November 19, 2008, of eight items comprising various master plans, board resolutions (including resolutions to dedicate park property), and declarations of policy. (See *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 7, fn. 2 [40 Cal.Rptr.3d 205, 129 P.3d 394] [notice proper for city council resolution]; *County of San Diego v. Grossmont-Cuyamaca Community College Dist.* (2006) 141 Cal.App.4th 86, 97, fn. 4 [45 Cal.Rptr.3d 674] [same, for community college "Master Plan of expansion final EIR"]; *Souza v. Westlands Water Dist.* (2006) 135 Cal.App.4th 879, 886–887, fn. 1 [38 Cal.Rptr.3d 78] [same, for water district's agenda]; see Evid. Code, § 452, subd. (b) [judicial notice permissible for "[r]egulations and legislative enactments issued by or under the authority of . . . any public entity in the United States"].) Although plaintiff concedes the materials are noticeable under the Evidence Code, he urges us to decline the request for judicial notice, arguing the materials are irrelevant to the Riverside District's practices. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 422, fn. 2 [101 Cal.Rptr.2d 200, 11 P.3d 956].) They are, however, relevant to the interpretation of sections 5540 and 5565. We thus reject the argument, as well as his further one that judicial notice is improper because the material was not submitted to the lower courts.

*necessary planning, boundary adjustments, provision for permanent access and other changes in configuration which may involve the disposition or exchange of portions of such lands have been completed.* Nevertheless, undedicated land may be used on a limited basis for park purposes, but any such use shall not in any way constitute an express or implied dedication of such lands for park purposes within the meaning of Section 5540 of the Public Resources Code." (Italics added.)

Thus, according to amici curiae's brief and the materials we have judicially noticed, regional park and open space districts in California have operated for decades under the statutory scheme at issue in this case and have interpreted section 5540 as giving them (1) the option of acquiring land without formally dedicating it for park or open space purposes, (2) the ability to hold land in a "land bank" until it is deemed appropriate for formal dedication, and (3) the authorization to later dedicate such property in perpetuity for park purposes. This ability to delay a board vote to "actually dedicate" acquired property allows districts to engage in long-range strategic planning, and permits such districts to acquire property when it becomes available and to hold it in a "land bank" for possible future use as park or open space, even if such use, for a variety of reasons, is not yet feasible. Nothing in these materials from the various districts supports the notion that all real property is deemed automatically dedicated for park purposes immediately upon acquisition by operation of section 5565. Such a long-standing interpretation of a statutory scheme by the government entities involved, established not by a single staff member but memorialized in their master plans or by a resolution adopted by their boards of directors, is entitled to great weight and we defer to it. (*Sara M. v. Superior Court, supra*, 36 Cal.4th at p. 1013.)

Our conclusion, moreover, is also consistent with section 5595, which provides: "This article[8] shall be liberally construed to promote its objects and to carry out its intents and purposes." As noted, *ante*, the intent of the legislative scheme was to create park districts "for the purpose of acquiring, improving, and maintaining parks, playgrounds, beaches, parkways, scenic drives, boulevards and other facilities for public recreation." (Stats. 1933, ch. 1043, p. 2664, italics omitted.) Amici curiae park districts explain in their brief why recognizing a difference between a dedication of land within the meaning of section 5565 and an actual dedication within the meaning of section 5540 promotes this legislative purpose, and why plaintiff's proposed scheme of automatic and immediate dedication by operation of section 5565 would severely undermine the functioning of park districts. According to amici curiae: "Many of the [park] districts lack the authority of eminent

---

[8] The term "article" in section 5595 refers to article 3 ("Regional Park, Park and Open-Space, and Open-Space Districts") of chapter 3 ("Districts") of division 5 ("Parks and Monuments") of the Public Resources Code.

domain, and therefore participate in the real estate market as any private buyer would—in competition with other potential purchasers. Even where a district has the power of eminent domain, it may have a policy to use this power sparingly for obvious practical and political reasons. Fee title acquisitions in particular require that a district act quickly and with the same flexibility as a private buyer. Often, a district must act to protect a parcel by purchasing it from a seller who has listed a parcel for sale before the district has had an opportunity to fully assess the potential park uses or boundaries of the parcel or the open space value of the parcel. On some occasions, the post-acquisition study might find that it is not in the public's best interest for the district to hold onto the property, or the entirety of the property. The district may then determine that it is in the best interest of the public to declare the property surplus, sell it, and use the funds to purchase other open space. Similarly, a seller might list several parcels for sale as an all or nothing proposition. The district may know in advance of the purchase that only some of the parcels are valuable park or open space properties, but may decide to go ahead with the acquisition with the intent of conveying that portion not appropriate for park or open space."

■ In sum, interpreting section 5540 so as to permit park districts to hold land they have acquired in a "land bank" until such time as it is appropriate to formally create a regional park or open space area and actually dedicate land as such is consistent with a liberal interpretation of sections 5540 and 5565 and is thus consistent with section 5595.

■ Plaintiff argues to the contrary that our conclusion that real property is not "actually dedicated" under section 5540 until a district's board of directors adopts a formal resolution of dedication actually violates section 5595. He claims our "interpretation would only serve to elevate form over substance and is antithetical to a liberal construction of the article" because it would create two classes of property—that dedicated for park use upon acquisition and that "actually dedicated" by formal resolution—identical in substance, but only the latter garnering the protections against conveyance set forth in section 5540. But aside from whether his proposed interpretation is more "liberal" or not, his premise is faulty, for land acquired but not formally dedicated for park or open space purposes is not identical to land that has been formally dedicated. The latter has been subjected to greater scrutiny by the district, culminating in a considered decision that it is appropriate for a park or open space area. Property that has not been subjected to these rigors is simply held in a "land bank" for possible future use as a park or open space area. We thus reject plaintiff's claim that our interpretation violates section 5595.

■ Plaintiff raises two additional subsidiary arguments, but neither is persuasive. He first contends that requiring some affirmative act in order to

"actually dedicate[]" property within the meaning of section 5540 effects a repeal of section 5565 by implication. Of course, such repeals are disfavored (*Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1030 [56 Cal.Rptr.3d 814, 155 P.3d 226]; *In re M.S.* (1995) 10 Cal.4th 698, 726 [42 Cal.Rptr.2d 355, 896 P.2d 1365]), but we disagree our interpretation of section 5540 renders section 5565 meaningless. Because section 5565 directs that "[t]he legal title to all property acquired by the district . . . shall immediately and by operation of law vest in the district, and shall be held by the district in trust for, and is dedicated and set apart for, the uses and purposes set forth in this article," land acquired by a park or open space district must be set aside and may not be used for nonpark purposes. Amici curiae park districts explain that they achieve this end by holding land in a "land bank" until appropriate planning, mapping, and surveying can be accomplished, a process that may or may not lead to formal dedication as a regional park or open space area. Although districts must set aside such land and hold it in trust, nothing in section 5565 obligates a district to immediately proceed and establish a park on the land. Instead, it may hold the land in trust for creation of a park in the future. (Cf. Pub. Util. Code, § 16432 [public utility can acquire land and hold it in trust, and such land "is dedicated and set apart to the uses and purposes set forth in this division"]; Stats. 1903, ch. 238, § 26, p. 298, West's Ann. Wat.—Appen. (1968 ed.) ch. 8, p. 67 [water drainage district can acquire land, and such land "shall be held by such district in trust for and is hereby dedicated and set apart to the uses and purposes set forth in this act"].)[9]

Plaintiff contends, finally, that his interpretation of sections 5540 and 5565 is more consistent with state constitutional policy, as set forth in section 8 of article XIII of the California Constitution. That section provides in pertinent part that "[t]o promote the conservation, preservation and continued existence of open space lands, the Legislature may define open space land and shall provide that when this land is enforceably restricted, in a manner specified by the Legislature, to recreation, enjoyment of scenic beauty, use or conservation of natural resources, or production of food or fiber, it shall be valued for property tax purposes only on a basis that is consistent with its restrictions and uses." Although no tax question is raised in the instant case, plaintiff apparently assumes this constitutional provision evidences a positive constitutional value for the promotion of open space. But even assuming his assumption is correct and that the provision could provide the basis for some

---

[9] We express no opinion on whether actions by the board other than adopting a formal resolution of dedication could establish under section 5540 that property has been "actually dedicated" for park or open space purposes.

enforceable right, it has no bearing here. As we have explained, the Legislature has in fact defined "when this land is enforceably restricted" by enacting section 5540, limiting when such land can be sold or otherwise conveyed following actual dedication for park or open space purposes. And, as amici curiae have explained, interpreting sections 5540 and 5565 to mean that land is actually dedicated immediately upon acquisition would eliminate a district's flexibility in dealing with its land holdings and actually diminish a park district's willingness to acquire land for park and open space purposes.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Chin, J., Moreno, J., and Corrigan, J., concurred.