[No. B210334. Second Dist., Div. Two. Oct. 20, 2009.]

DEPARTMENT OF TRANSPORTATION, Plaintiff and Respondent, v. STATE PERSONNEL BOARD, Defendant and Respondent; LEE B. KENDRICK III, Real Party in Interest and Appellant.

COUNSEL

Ronald W. Beals, Chief Counsel, Linda Cohen Harrel, Deputy Chief Counsel, Robert W. Vidor, Alexander D. DeVorkin, Carol Quan, William H. Rittenburg and Jerald M. Montoya for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

Gerald A. James for Real Party in Interest and Appellant.

## OPINION

**BOREN, P. J.**—The Fourth Amendment "has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons." (*Stone v. Powell* (1976) 428 U.S. 465, 486 [49 L.Ed.2d 1067, 96 S.Ct. 3037].)[1] In this case, a state transportation employee is seeking to apply the exclusionary rule *in a civil disciplinary proceeding*, to bar introduction of incriminating evidence seized from his car and his pockets by the California Highway Patrol. We conclude that the exclusionary rule does not apply. Although an illegal search took place, it occurred during a criminal investigation, and was not conducted by the agency that employs the worker being disciplined. Excluding evidence in an administrative disciplinary proceeding would have no deterrent effect on a state law enforcement officer investigating reports of a crime occurring at another state agency.

## FACTS

### *Appellant Threatens His Supervisor, Is Arrested, and Is Searched by the California Highway Patrol*

In 2004, the California Highway Patrol (CHP) was summoned to investigate a disturbance at a Department of Transportation (Caltrans) facility in Ventura. Appellant Lee B. Kendrick III, a Caltrans employee, allegedly threatened a supervisor, Michael McBarron, after McBarron asked Kendrick to remove his tools from a Caltrans vehicle. Kendrick shouted, "You treat me like an apprentice. The way you talk to me, I could knock you out!" When McBarron said, "Are you threatening me?," Kendrick replied, "The way you talk to me, I could pull your hair out!"

McBarron asked another Caltrans supervisor to call the police because Kendrick had made threats. During an interview with the CHP officer who arrived to investigate, McBarron indicated that Kendrick was capable of physical violence for several reasons: he had an arrest on weapons charges; he previously threatened to "get" a supervisor if he lost his job; and he said somebody would get "choked out" or "get the shit kicked out of him." McBarron told the officer he "feared that Kendrick might try to cause him physical harm."

---

[1] The Fourth Amendment assures the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

Kendrick returned from the field, walked to his personal vehicle, and began retrieving objects from it. Recalling that Kendrick had an arrest on weapons charges, the CHP officer "decided to contact him at his vehicle to make sure he wasn't attempting to retrieve a weapon." Kendrick conceded to the officer that he used profanity with McBarron, but denied making threats, other than saying "Why don't I stomp you a new mudhole." He added that he was not being serious when he said this.

The CHP officer arrested Kendrick for making criminal threats, fighting, and using offensive words. He looked inside Kendrick's vehicle and found a nine-millimeter handgun, two loaded magazines and 23 loose rounds of ammunition in a fanny pack under the passenger seat. The officer searched Kendrick, finding a glass vial with a white crystalline substance, which Kendrick admitted (and testing showed) was methamphetamine. After ensuring that Kendrick was not carrying a weapon, the officer continued to search Kendrick's car, finding marijuana and a $20 bill rolled into a straw. When asked whether he employed this object to ingest methamphetamines, Kendrick answered, "Only when I'm not smoking it."[2]

### Appellant Is Terminated from His Employment

As a result of this incident, Kendrick was dismissed from his job. The grounds for dismissal were inexcusable neglect of duty; insubordination; discourteous treatment of the public or other employees; willful disobedience; and other failure of good behavior either during or outside of duty hours of such a nature that it caused discredit to the appointing authority or the person's employment. Specifically, Kendrick was discourteous towards his supervisor, McBarron, shouting at and threatening him, and he violated Caltrans policies prohibiting violence, weapons and drugs in the workplace. By threatening his supervisor and having a weapon and illegal drugs on state property, Kendrick brought discredit to his agency.

### Criminal Charges Against Kendrick Are Dismissed

Kendrick faced criminal charges for possession of a controlled substance and having a concealed firearm in a vehicle. Citing the Fourth Amendment, Kendrick brought a motion in criminal court to suppress evidence discovered

---

[2] We note that the propriety of the discipline imposed on Kendrick has not yet been determined; therefore, our summary of the facts leading to the discipline is not intended to have a res judicata effect in any ultimate adjudication on the merits.

during the CHP officer's search of his car and his person. He argued that his arrest was unlawful because he did not make criminal threats. Because the arrest was unlawful, the CHP search was unlawful and any evidence obtained from it must be suppressed. The court granted Kendrick's motion to suppress. As a result, the criminal charges were dismissed because the state could not prove its case.

### Kendrick Seeks Administrative Review of His Employment Termination

Kendrick appealed the termination of his employment to the State Personnel Board (the Board). He asked the Board to apply the exclusionary rule to the evidence seized from his car and his person, arguing that unlawfully obtained evidence cannot be relied upon as the basis for terminating his employment. He maintained that the rule excluding improperly seized evidence in criminal matters applies with equal force to government employee disciplinary matters. Kendrick asserted that principles of res judicata prevent Caltrans from relitigating the validity of the search and seizure, after the criminal court determined that the exclusionary rule applies.

In response, Caltrans argued that it did not conduct the investigation or search of Kendrick; rather, the CHP arrested Kendrick and conducted a search. Because the search was not performed by the agency initiating the disciplinary action, suppressing the evidence would not have any effect on the behavior of Caltrans officials. By the same token, the CHP would not be affected by the suppression of evidence. The CHP conducts criminal investigations; it does not gather evidence for use in personnel matters.

An administrative law judge (ALJ) conducted a hearing on Kendrick's motion to apply the exclusionary rule. The ALJ concluded that the exclusionary rule only applies "where the agency seeking to use the illegally obtained evidence is the agency [that] conducted the search . . . ." Because Caltrans did not conduct the challenged search, the evidence seized from Kendrick by the CHP "warrants consideration in this proceeding." The Board initially adopted the ALJ's proposed decision. A few months later, the Board granted Kendrick's petition for rehearing to address one issue: "Should the exclusionary rule apply to bar from the administrative hearing evidence recovered as a result of an illegal search by the California Highway Patrol?"

On rehearing, the Board decided that the evidence seized from Kendrick must be excluded from the administrative proceeding. The Board recognized

that the search was not performed by a Caltrans employee, and that Caltrans has no authority to direct the manner in which the CHP conducts its investigations. Nevertheless, the Board reasoned that the CHP officer who was summoned to the Caltrans site "could reasonably anticipate that both criminal proceedings, and administrative disciplinary proceedings, might very well be based on his investigative findings." The Board observed that the CHP officer is a civil service employee; therefore, "the Board believes it likely" that the officer "was well aware" that his criminal investigation "could result" in administrative disciplinary proceedings against Kendrick. The Board concluded that "application of the exclusionary rule to these proceedings will have a strong deterrent effect on CHP Officers in the future when they conduct investigations into possible criminal misconduct by state employees at state worksites." The Board certified its decision for publication as a "Precedential Decision."

### Caltrans's Petition for a Writ of Mandate

Caltrans pursued a petition for a writ of mandate in the superior court, challenging the Board's decision. At the initial hearing, the trial court raised, sua sponte, the issue of exhaustion of remedies, noting that Kendrick's employment termination had not yet been resolved, so "the case is not over" for purposes of judicial review. Caltrans conceded that it would be futile to proceed with the disciplinary hearing if the evidence seized from Kendrick was excluded. The trial court was then satisfied that Caltrans had exhausted its remedies.

Proceeding to the merits of the case, the trial court found "plain error" by the Board in thinking that "a police officer is aware or even knows that a search may be used civilly or administratively . . ." because law enforcement officers only care about "putting people in jail and enforcement of the criminal sanctions. There is just no evidence at all that the CHP officer here personally or as a group CHP officers generally would be deterred if the evidence were suppressed." For the exclusionary rule to apply, the court continued, there has to be "egregious police misconduct such as a coerced confession or a situation where the police officer is the agent or a stalking horse for the prosecuting agency." In Kendrick's case, the CHP was not providing security, as it does for the Court of Appeal, for example, but instead was "doing a criminal investigation [and] conducted an illegal search." The court found that the Board failed to weigh the risk of harm to the public in excluding the evidence, noting that it "serves a public interest in not having state employees bring guns and drugs on site, particularly in an age when many public entities have a zero tolerance for workplace violence.

The context of an alleged terrorist threat and the ready availability of a gun and/or drug use is particularly troubling for the safety of public employees." The court gave judgment to Caltrans.

On June 30, 2008, the court granted a peremptory writ of mandate. It found that the Board abused its discretion by applying the exclusionary rule. The Board proceeded from "the flawed premise" that applying the exclusionary rule would deter unlawful searches and seizures by an officer called to investigate workplace violence, without any evidence that the officer might be aware that seized items could be used in an employee disciplinary hearing. The Board failed to consider the potential harm to state employees and the public in applying the exclusionary rule, when Kendrick made a physical threat and had ready access to a firearm in his vehicle. The court commanded the Board to vacate its decision.

## DISCUSSION

Kendrick appeals from the judgment in the mandamus proceeding. (Code Civ. Proc., § 904.1, subd. (a)(1); *U.D. Registry, Inc. v. Municipal Court* (1996) 50 Cal.App.4th 671, 673 [57 Cal.Rptr.2d 788].)[3] For purposes of this appeal, the facts are not in dispute regarding the argument between Kendrick and McBarron, and the CHP's seizure of evidence from Kendrick. It is also undisputed that CHP officers are "peace officers" responsible for investigating reports of crime occurring on state property. (Pen. Code, § 830.2, subd. (a); Veh. Code, §§ 2400, subd. (g), 2409.)

The sole issue presented is whether the exclusionary rule bars admission, in an administrative proceeding, of evidence recovered in an illegal search conducted by the CHP. This is a question of law, which we review independently of the trial court. (*Santa Clara Valley Transportation Authority v. Rea* (2006) 140 Cal.App.4th 1303, 1313 [45 Cal.Rptr.3d 511]; *Conlan v. Bonta'* (2002) 102 Cal.App.4th 745, 753 [125 Cal.Rptr.2d 788].) The courts defer to an agency's interpretation of a statute governing its powers and responsibilities. (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 292 [93 Cal.Rptr.3d 369, 206 P.3d 739].) However, the Board in this case was interpreting appellate case law relating to the applicability of the exclusionary rule in an administrative proceeding. The

---

[3] Kendrick also appeals from the peremptory writ of mandate issued pursuant to the judgment, from which no appeal lies. (*C.R.W. v. Orr* (1970) 13 Cal.App.3d 70, 72, fn. 2 [91 Cal.Rptr. 446].) The attempted appeal from the writ is dismissed. (*Ibid.*)

Board's interpretation of appellate opinions is minimally persuasive, so we independently review the Board's decision as well. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 8 [78 Cal.Rptr.2d 1, 960 P.2d 1031].)

■ The purpose of the exclusionary rule is to deter the police from violating the Fourth Amendment prohibition on unreasonable searches and seizures "in the only effectively available way—by removing the incentive to disregard it." (*Elkins v. United States* (1960) 364 U.S. 206, 217 [4 L.Ed.2d 1669, 80 S.Ct. 1437].) "The exclusionary rules of the criminal law are based upon the principle that the state should not profit by its own wrong in using in criminal proceedings evidence obtained by unconstitutional methods; and upon the premise that by denying any profit to law enforcement officers who may be tempted to use illegal methods to obtain incriminating evidence (i.e., by not allowing the use of such evidence at the trial), the rules will have a deterrent effect." (*Emslie v. State Bar* (1974) 11 Cal.3d 210, 226–227 [113 Cal.Rptr. 175, 520 P.2d 991]; see *People v. Ramirez* (1983) 34 Cal.3d 541, 547 [194 Cal.Rptr. 454, 668 P.2d 761] [citing "the deterrence goal of the exclusionary rule" by suppressing the fruits of an invalid arrest].)

The exclusionary rule has obvious application to criminal proceedings. (See Pen. Code, § 1538.5, subd. (a)(1), authorizing the suppression of unlawfully seized evidence in criminal cases.) But it "is rarely applied in civil actions in the absence of statutory authorization, although government agencies may be involved, and even though the government itself unlawfully seized the evidence." (*Gordon J. v. Santa Ana Unified School Dist.* (1984) 162 Cal.App.3d 530, 542 [208 Cal.Rptr. 657], fn. omitted.) The exclusionary rule is extended "only to [civil] proceedings so closely identified with the aims of criminal prosecution as to be deemed 'quasi-criminal.' " (*In re Lance W.* (1985) 37 Cal.3d 873, 892 [210 Cal.Rptr. 631, 694 P.2d 744]; see *Conservatorship of Susan T.* (1994) 8 Cal.4th 1005, 1016 [36 Cal.Rptr.2d 40, 884 P.2d 988].)

■ The courts have seldom applied the exclusionary rule in administrative cases, even ones in which severe penalties are imposed based on the admission of illegally seized evidence. Thus, the exclusionary rule has *not* been applied to limit evidence in administrative proceedings to revoke a lawyer's license after he burglarized hotel rooms (*Emslie v. State Bar, supra,* 11 Cal.3d at p. 229) or to a proceeding to discipline a physician for dishonesty and falsification of records (*Pating v. Board of Medical Quality*

*Assurance* (1982) 130 Cal.App.3d 608, 624 [182 Cal.Rptr. 20]). Nor does it apply in an administrative hearing to discharge a teacher convicted of engaging in prostitution. (*Governing Board v. Metcalf* (1974) 36 Cal.App.3d 546, 551 [111 Cal.Rptr. 724].) The exclusionary rule does not apply to driver's license suspension proceedings (*Park v. Valverde* (2007) 152 Cal.App.4th 877, 880 [61 Cal.Rptr.3d 895]), or to the suspension of a high school student found to be carrying drugs during an unlawful search conducted by the school vice-principal (*Gordon J. v. Santa Ana Unified School Dist., supra*, 162 Cal.App.3d at pp. 532, 542–546). Further, the exclusionary rule does not apply to a civil deportation proceeding following an unlawful warrantless arrest, all performed by the same government agency (*INS v. Lopez-Mendoza* (1984) 468 U.S. 1032, 1050 [82 L.Ed.2d 778, 104 S.Ct. 3479]), or to a federal tax assessment proceeding following the unlawful seizure of evidence by the police (*United States v. Janis* (1976) 428 U.S. 433, 447–460 [49 L.Ed.2d 1046, 96 S.Ct. 3021]).

In a rare case, the exclusionary rule was applied to bar the admission of evidence in a proceeding to dismiss a state school youth counselor accused of stealing T-shirts and an intercom. (*Dyson v. State Personnel Bd.* (1989) 213 Cal.App.3d 711 [262 Cal.Rptr. 112].) An illegal search of Dyson's home was conducted by an officer in charge of the school's security, who received word from Dyson's estranged wife that her husband was stealing state property. (*Id.* at pp. 715–717.) The crucial point was that "The evidence seized in this case was in no way the independent product of police work"; rather, the search "was directed by and the evidence was seized and held by the agency" that employed Dyson. (*Id.* at pp. 718–719.) Under the circumstances, the court applied the exclusionary rule because "The unconstitutional search could not have a tighter nexus with the agency that seeks to profit from it." (*Id.* at p. 721.)

*Dyson* is inapposite. The search in this case was not requested by Caltrans, it was not performed by Caltrans, nor was the evidence seized or held by Caltrans for use in a disciplinary proceeding. There is no nexus tying Caltrans to a search initiated and conducted by the CHP. The Board acknowledged that Caltrans has no authority to direct the manner in which the CHP conducts its investigations. Nevertheless, Kendrick contends that "the CHP and Caltrans are indistinguishable" and "not independent." We disagree. Caltrans, the CHP, the Board, and this court are all state entities, yet all four entities are wholly distinguishable and independent of each other.

In administrative disciplinary proceedings, "a balancing test must be applied . . . and consideration must be given to the social consequences of

applying the exclusionary rules and to the effect thereof on the integrity of the judicial process." (*Emslie v. State Bar, supra*, 11 Cal.3d at p. 229; accord, *INS v. Lopez-Mendoza, supra*, 468 U.S. 1032, 1041 [courts weigh the social benefits of excluding unlawfully seized evidence against the likely costs].) "Criminal penalties are primarily designed to punish the offender. Administrative penalties may also be punitive, but they are primarily designed to protect the public from the practices of the offender." (*Gordon J. v. Santa Ana Unified School Dist., supra*, 162 Cal.App.3d at p. 546.) We are mindful that government employees "owe unique duties of loyalty, trust, and candor to their employers, and to the public at large. [Citation.] Public agencies must be able promptly to investigate and discipline their employees' betrayals of this trust." (*Spielbauer v. County of Santa Clara* (2009) 45 Cal.4th 704, 725 [88 Cal.Rptr.3d 590, 199 P.3d 1125].)

In conducting the balancing test, one factor to consider is whether the evidence was obtained "under circumstances which 'shocked the conscience' . . ." (*Emslie v. State Bar, supra*, 11 Cal.3d at p. 228), or whether the police conduct was "so egregious as to offend the ' "traditions and [collective] conscience of our people" ' " (*Conservatorship of Susan T., supra*, 8 Cal.4th at p. 1020). Even in an administrative setting, "egregious violations" of the Fourth Amendment "might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained." (*INS v. Lopez-Mendoza, supra*, 468 U.S. at pp. 1050–1051.) We also consider whether the circumstances surrounding an unlawfully obtained confession show it was "involuntary" or "coerced." (*In re Martinez* (1970) 1 Cal.3d 641, 650 [83 Cal.Rptr. 382, 463 P.2d 734].)

■ Applying a balancing test to the case at bench, we find insufficient grounds for extending the exclusionary rule to this disciplinary proceeding. The public is entitled to be protected from a state worker who uses illegal drugs and carries a concealed weapon. And public employees are entitled to protection from a potentially dangerous coworker. Drug use on the job and possession of a readily accessible firearm present a life-threatening danger to the public.

■ "Balanced against [these dangers] must be the deterrent effect of the exclusionary rule designed to control the conduct of law enforcement officers, to keep the court from being an unwilling participant in such conduct, and to insure the reliability of evidence." (*Pating v. Board of Medical Quality Assurance, supra*, 130 Cal.App.3d at p. 624.) The evidence in this case was seized by a CHP officer investigating criminal threats. There is no reason to believe that the CHP fabricated a case that might lead to Kendrick's dismissal from his employment. There is no egregious law enforcement behavior that "shocks the conscience." No coercion was used to obtain Kendrick's admission that he uses a rolled $20 bill to ingest methamphetamine "when I'm not

smoking it." Finally, the CHP officer was "already 'punished' by the exclusion of the evidence in the state criminal trial . . . so that the entire criminal enforcement process, which is the concern and duty of these officers, is frustrated." (*United States v. Janis, supra*, 428 U.S. at p. 448, fn. omitted.)

The Board posited that the CHP officer could have anticipated the disciplinary proceeding and may have conducted his investigation to further the ends of Caltrans administrators. This is pure speculation. The courts have already found that the opposite presumption is true: "The police in making investigations of suspected criminal activity are, we surmise, generally completely unaware of any consequences of success in their investigative efforts other than the subsequent criminal prosecution of the suspected offender." (*Governing Board v. Metcalf, supra*, 36 Cal.App.3d at p. 549; see *Conservatorship of Susan T., supra*, 8 Cal.4th at pp. 1017–1018; *Dyson v. State Personnel Bd., supra*, 213 Cal.App.3d at p. 718.) Surely, there is no limit to the conceivable musings of a law enforcement officer regarding the possible consequences of making an arrest. If an intoxicated driver kills someone in a collision, might the CHP consider that the suspect's job and marriage could be endangered by his arrest and incarceration? Perhaps. Should these considerations deter the CHP from conducting a vigorous criminal investigation? No.

We shall not indulge in speculation about whether the CHP officer anticipated possible disciplinary proceedings for Caltrans workplace policy violations. It is enough to know that the CHP was conducting an independent criminal investigation into a report of criminal threats at the time the evidence was seized. There is no evidence in this case that the CHP was conducting an administrative investigation on behalf of Caltrans. Indeed, we are unaware of any statute allowing the CHP to investigate workplace policy violations occurring at another state agency.

The Board erred by applying the exclusionary rule in this case. The Board's identification of a possible deterrent effect on the CHP is illusory: the CHP was already "punished" when criminal charges against Kendrick were dismissed. Nothing further would be added by dismissing the disciplinary action, when the CHP was not engaged in an administrative investigation. Outweighing the minimal or nonexistent deterrent effect on the CHP are the significant risks posed to the public and Caltrans workers of suppressing evidence on behalf of an employee who carries illegal drugs and a concealed firearm. For these reasons, we affirm the trial court's judgment in favor of Caltrans.

## <u>DISPOSITION</u>

The judgment is affirmed. The appeal from the writ is dismissed.

Ashmann-Gerst, J., and Chavez, J., concurred.