[No. B187029. Second Dist., Div. Six. Oct. 10, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
CLARENCE HANNIBAL, Defendant and Appellant.

**COUNSEL**

Rudy Kraft, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan Sullivan Pithey and Tasha G. Timbadia, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PERREN, J.**—Clarence Hannibal appeals from an order committing him to the Department of Mental Health for treatment as a mentally disordered offender (MDO). (Pen. Code, § 2960 et seq.)[1] He contends (1) the trial court abused its discretion in denying his request for self-representation; (2) the

---

[1] Statutory references are to the Penal Code unless otherwise noted.

relitigation of his mental state at the time of his controlling offense, which was at issue in a prior MDO proceeding, was barred by principles of res judicata and collateral estoppel; and (3) the evidence was insufficient to support the finding that he qualified as an MDO. We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 12, 2000, Hannibal was convicted of battery with serious injury and sentenced to three years in state prison. Prior to his parole release date in 2002, the Board of Prison Terms (BPT) determined that he met the criteria qualifying him as an MDO, and required that he accept treatment as a condition of parole. Hannibal filed a petition for a hearing pursuant to section 2966, subdivision (b), to contest the BPT's decision.[2] That petition was granted on the court's finding that there was a reasonable doubt whether Hannibal was suffering from a severe mental disorder at the time of the BPT hearing.

After Hannibal served additional time on a parole violation and was scheduled for release in February of 2005, the BPT again determined that he met the MDO criteria and required him to accept treatment as a condition of his parole. Hannibal once again petitioned for a hearing to contest the BPT's decision, and waived his right to a jury trial.

At the hearing, Dr. William Robert Safarjan, Hannibal's treating psychologist at Atascadero State Hospital (ASH) from January to August of 2005, opined that Hannibal met all of the MDO criteria as of the February 22, 2005, BPT hearing. The doctor testified that Hannibal suffered from paranoid schizophrenia, a severe mental disorder, and had displayed symptoms of that disorder including delusional thinking, paranoid thoughts, auditory and visual hallucinations, thought disorder, and mood lability. The doctor also opined that Hannibal's severe mental disorder was either a cause or aggravating factor in the commission of the underlying battery offense, due to the fact that Hannibal had exhibited similar behaviors while undergoing treatment in

---

[2] Section 2966, subdivision (b) provides in pertinent part: "A prisoner who disagrees with the determination of the Board of Prison Terms that he or she meets the criteria of Section 2962, may file in the superior court . . . a petition for a hearing on whether he or she, as of the date of the Board of Prison Terms hearing, met the criteria of Section 2962. . . . The court shall advise the petitioner of his or her right to be represented by an attorney and of the right to a jury trial. . . . The hearing shall be a civil hearing . . . . The standard of proof shall be beyond a reasonable doubt, and if the trial is by jury, the jury shall be unanimous in its verdict. The trial shall be by jury unless waived by both the person and the district attorney."

Safarjan's unit. Dr. Safarjan recounted that Hannibal had boarded a bus, approached an elderly Chinese woman, and initiated an argument until she became frightened and left her seat. After Hannibal sat in her place, he threatened two Hispanic men and told them he had a knife.

Dr. Safarjan also opined that Hannibal would not be kept in remission without treatment due to his "overt behavior" in the year preceding his BPT hearing. Hannibal failed to comply with his treatment plan and had violated parole twice. Hannibal's failure to accept the fact that he has a mental disorder also rendered it unlikely that he would attend to his needs and seek treatment voluntarily. The doctor also noted that Hannibal had received 90 or more days of treatment for his severe mental disorder in the year prior to his parole release date, and that Hannibal did not like to take his medication because he believed it was "toxic." The doctor also concluded that Hannibal represented a substantial danger to others by reason of his severe mental disorder, as evidenced by his parole violations, drug use, and other violent offenses for battery prior to the controlling offense in 1999. Three other psychologists (Drs. Miller, Phenix, and Starr) similarly concluded that Hannibal met all of the section 2962 criteria and therefore qualified for treatment as an MDO.

Consulting psychologist Dr. Leifer reported that although Hannibal had a "defined severe mental disorder," none of the documents generated around the time of the controlling offense revealed any "gross impairments in thought or functioning characteristic of any [section] 2962[] severe mental disorder." Accordingly, Dr. Leifer concluded that Hannibal's severe mental disorder was not a cause or aggravating factor in his commission of the controlling offense. The doctor also concluded that Hannibal's mental disorder was in remission, but could not be kept in remission as demonstrated by his parole violations and treatment noncompliance. He also concluded that Hannibal represented a substantial danger to others, although not by reason of his severe mental disorder.

Dr. Beth Gier, Hannibal's treating psychologist at ASH from April 2001 to March 2002, provided a report she had prepared in connection with the prior proceeding in which the court found a reasonable doubt whether Hannibal was presently suffering from a severe mental disorder. Dr. Gier explained that she had diagnosed Hannibal as suffering from schizophrenia of an undifferentiated type, but she had been unable to determine whether the mental disorder was "severe" at the time of the BPT hearing, as contemplated by section 2962, subdivision (b). While she was treating Hannibal, he was taking only a

homeopathic dose of medication. She also indicated that the type of schizophrenia Hannibal suffered from was not curable and could not be put into remission, which conflicted with her prior conclusion that Hannibal's disorder was in remission at the time of the BPT hearing in 2002.

At the conclusion of the trial, the court found that Hannibal met the criteria of an MDO at the time of the BPT hearing and ordered him committed to treatment.

## DISCUSSION

### Hannibal's Request for Self-representation

Hannibal contends he was denied his constitutional and statutory rights to represent himself in the MDO proceedings. Because those proceedings were civil in nature, Hannibal had no constitutional right to represent himself. (*People v. Williams* (2003) 110 Cal.App.4th 1577, 1592 [2 Cal.Rptr.3d 890].) Hannibal's right to represent himself was purely statutory, so we review the denial of his request for an abuse of discretion and "will reverse only if it is more probable than not that [Hannibal] would have received a better result had he been allowed to represent himself. [Citation.]" (*Id.*, at pp. 1592–1593.)

Hannibal told the court that he wanted to discharge his attorney "because . . . I can do a job myself. You know, I can get myself in a mess and I can get myself out of a mess. Maybe not as good as this gentleman, having the same equipment that they have, but you know, I think I can do it." He stated his understanding that six criteria needed to be proven in order to qualify him as an MDO, and was able to name three of them. He also expressed his understanding that although the proceedings were civil in nature, they were governed by the rules of criminal procedure. He also indicated that he had successfully represented himself in his prior MDO matter. When asked about the concepts of res judicata and collateral estoppel, Hannibal responded: "Collateral estoppel is a prior judgment. Like in my last proceedings, the final judgment of the decision of the judge . . . . Once the petition has been filed and it has been, for whatever reason, dismissed . . . and for you to file another litigation against an individual, collateral estoppel will apply, the whole doctrine." The court told Hannibal, "It's more complicated than that." Hannibal then stated that he had "two doubts" about his attorney's "strategy of defending" him, and that he did not understand why his attorney wanted to admit Dr. Gier's report from the 2002 MDO proceedings. He also indicated that he would be willing to accept a different lawyer, such as his former attorney Barry Smith. He also indicated that he could not disclose what he was "trying to say" in front of the prosecutor.

After recognizing that Hannibal's request for self-representation was a matter of the court's discretion, the court stated that "[a]lthough he does understand the consequences of self-representation, he does not understand how important it is that, given the specific issues of collateral estoppel and res judicata apply [*sic*] as well as the evidence that the court deems may well be relevant. [¶] So I'm going to exercise my discretion . . . . I'm going to deny the right to represent yourself . . . ."

The court did not abuse its discretion in denying Hannibal's request for self-representation. First, Hannibal's request to represent himself was not unequivocal, in that he indicated his willingness to work with a different lawyer. Moreover, the court did not abuse its discretion in concluding that Hannibal had failed to fully appreciate the complexity of the legal issues in the case and the need for a lawyer to properly present them for adjudication. That conclusion was amply demonstrated by Hannibal's criticism of his attorney's intention to present Dr. Gier's report, which was crucial to the issues of res judicata and collateral estoppel as well as the determination of the section 2962 criteria.

Hannibal argues that the trial court impermissibly based its denial of his request on the conclusion that "he was not competent enough as an attorney." For support, he relies on *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], and its progeny, which govern the adjudication of requests for self-representation in *criminal* proceedings. As we have noted, Hannibal's request to represent himself in the MDO proceedings derives from a purely statutory right and is a matter of judicial discretion. (*People v. Williams, supra*, 110 Cal.App.4th at p. 1592.) In exercising that discretion, the court was entitled to consider whether Hannibal had the ability to effectively represent himself. (*Ibid.*)

Moreover, even if the court had abused its discretion in denying Hannibal's request to represent himself, "we will reverse only if it is more probable than not that [Hannibal] would have received a better result had he been allowed to represent himself. [Citation.]" (*People v. Williams, supra*, 110 Cal.App.4th at pp. 1592–1593.) Hannibal has made no such showing. On the contrary, Hannibal indicated that he would have refrained from offering evidence supporting his defense. Accordingly, Hannibal's claim that the court committed prejudicial error in denying his request for self-representation fails.

### *Res Judicata and Collateral Estoppel*

Hannibal argues the trial court erred in concluding that the relitigation of his mental state at the time of his controlling offense, which was the subject

of a prior MDO proceeding, was not barred by principles of res judicata and collateral estoppel. We disagree.

█ A prisoner may be committed for treatment as a condition of parole if (1) he has a severe mental disorder; (2) he used force or violence in committing the underlying offense; (3) the severe mental disorder was one of the causes or an aggravating factor in the commission of that offense; (4) the disorder is not in remission or capable of being kept in remission without treatment; (5) he was treated for the disorder for at least 90 days in the year before his release; and (6) by reason of his severe mental disorder, he poses a serious threat of physical harm to others. (§ 2962, subds. (a)–(d)(1); *People v. Francis* (2002) 98 Cal.App.4th 873, 876–877 [120 Cal.Rptr.2d 90].)

█ "Of the criteria listed in section 2962, only three might be capable of change: the existence of a severe mental disorder; whether the disorder is in remission and whether the prisoner poses a serious threat of physical harm to others. The remaining three criteria concern past events that once established, are incapable of change: whether the prisoner used force or violence in committing the underlying offense; whether he was treated for the disorder for at least 90 days in the year before his release; and whether his severe mental disorder was one of the causes or an aggravating factor in the commission of the underlying offense." (*People v. Francis, supra,* 98 Cal.App.4th at pp. 878–879.) Under the doctrines of res judicata and collateral estoppel, issues relating to the three criteria concerning past events that have been litigated in an MDO proceeding cannot be relitigated in a subsequent proceeding. (*Id.,* at p. 877.) Accordingly, "where a trial court has found that a severe mental disorder was not an aggravating factor in the commission of the crime, the People are precluded from seeking a second MDO determination based on the same underlying offense." (*Id.,* at p. 879.)

Here, Hannibal's 1999 battery offense was the subject of a prior MDO proceeding in 2002. The evidence offered at that proceeding consisted of an "MDO Status Report" prepared by Hannibal's treating psychologist, Beth Gier. In that report, Dr. Gier indicated that she was unable to determine whether Hannibal had a severe mental disorder at the time of the BPT hearing. Although Hannibal suffered from an undifferentiated type of schizophrenia with paranoid features, the doctor noted that for the past eight months he had been taking a "homeopathic dose" of his medications that was "inadequate . . . to impact brain chemistry." Based on the low dosage of medication, the doctor also concluded that Hannibal's schizophrenia appeared to be in remission. The doctor also concluded, however, that Hannibal's severe mental disorder was one of the causes or was an aggravating factor in the commission of the battery, and noted that he had been "found incompetent to stand trial initially for [his] controlling offense." After reviewing

Dr. Gier's report, the court stated, "I will find that I have a reasonable doubt as to whether Mr. Hannibal suffers from a severe mental disorder, and will order you, Mr. Hannibal, to be released on parole."

In the subsequent MDO proceeding that is the subject of this appeal, which was initiated after Hannibal again violated parole and was subject to release after serving additional time, Hannibal argued that the relitigation of his mental state was barred by the doctrines of res judicata and collateral estoppel. Relying on *People v. Francis*, Hannibal contends, as he did below, that the trial court's finding in the prior proceeding that he did not suffer from a severe mental disorder compelled the finding that a severe mental disorder was not a cause or aggravating factor in his commission of the controlling offense. The trial court rejected that contention, reasoning that "*Francis* was a much different case in the sense that the doctor's report indicated . . . that the lack of a severe mental disorder precluded a finding that the serious mental disorder was an aggravating factor in the commission of the offense. [¶] The criteria are distinct, I think, for [MDO] purposes because you are looking at the [BPT] hearing date, and on that date you have a reasonable doubt as to whether or not there was a severe mental disorder without getting into and necessarily adjudicating that five years before the mental disorder was a cause or aggravating factor of the underlying offense." We agree.

In the prior proceeding, the trial court merely found a reasonable doubt whether Hannibal suffered from a severe mental disorder *at the time of the BPT hearing*. Dr. Gier's report, which was the only evidence offered on the matter, concluded, however, that Hannibal *did* suffer from a severe mental disorder at the time of the controlling offense, and that the disorder was a cause or aggravating factor in its commission. In *Francis*, the psychologist expressly concluded that the defendant had *never* suffered from a severe mental disorder, which compelled the finding that no severe mental disorder was a cause or aggravating factor in his commission of the controlling offense. (*People v. Francis, supra*, 98 Cal.App.4th at pp. 878–879.) Because the court in this case merely found that Hannibal did not suffer from a severe mental disorder at the time of the BPT hearing, and that criteria was subject to change, the People were not precluded from relitigating that issue in a subsequent proceeding.

Moreover, the finding that Hannibal did not suffer from a severe mental disorder at the time of the BPT hearing in the prior proceeding was irrelevant to the determination whether he was suffering from a severe mental disorder when he committed the controlling offense. Indeed, Dr. Gier expressly

concluded that Hannibal *did* suffer from a severe mental disorder at that time, and that the disorder was a cause or aggravating factor in his commission of the offense. Accordingly, the People were not barred from establishing in the instant proceeding that Hannibal's severe mental disorder was a cause or aggravating factor in his commission of the controlling offense.

Hannibal's reliance on *People v. Parham* (2003) 111 Cal.App.4th 1178 [4 Cal.Rptr.3d 609], is also unavailing. In *Parham*, the trial court in the prior proceeding adopted the opinion of a psychologist who found that the defendant did not suffer from a severe mental disorder from 1973 to 1998. Because the defendant's commitment offense occurred in 1997, we concluded that the trial court necessarily found that the defendant did not have a severe mental disorder at the time of his 1997 offense, and that the People were therefore precluded from attempting to establish in the subsequent proceeding that the defendant's severe mental disorder was a cause or aggravating factor in his commission of the controlling offense. (*Id.*, at p. 1182.) Here, Dr. Gier expressly found that Hannibal *did* suffer from a severe mental disorder at the time of his controlling offense, although he was not presently suffering from that disorder at the time of the BPT hearing. Under the circumstances, the doctrines of res judicata and collateral estoppel did not bar the relitigation of Hannibal's mental state at the time of his controlling offense.

### Sufficiency of the Evidence

Hannibal asserts that the evidence is insufficient to support the trial court's finding that he qualifies as an MDO. "In considering the sufficiency of the evidence to support MDO findings, an appellate court must determine whether, on the whole record, a rational trier of fact could have found that defendant is an MDO beyond a reasonable doubt, considering all the evidence in the light which is most favorable to the People, and drawing all inferences the trier could reasonably have made to support the finding. [Citation.] ' " 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the [finding] is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact finder. . . .' [Citation.]" ' [Citations.]" (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082–1083 [98 Cal.Rptr.2d 767].)

First, Hannibal challenges the finding that his severe mental disorder was not in remission or could not be kept in remission without treatment. According to Hannibal, the court could not rely on the experts' opinions that he could not be kept in remission without treatment because those opinions are based on reports that are hearsay. Aside from the fact that such information is properly relied on by mental health experts in the context of MDO proceedings and is not hearsay (*People v. Miller* (1994) 25 Cal.App.4th 913, 917–918 [31 Cal.Rptr.2d 423]), Hannibal overlooks the experts' opinions that his severe mental disorder is not in remission. In light of those conclusions, it is irrelevant whether Hannibal's disorder could be kept in remission without treatment. In any event, the record belies Hannibal's contention that there is insufficient evidence to support the finding that his mental disorder cannot be kept in remission without treatment. The evidence is also sufficient to establish that Hannibal's severe mental disorder was a cause or aggravating factor in his commission of the controlling offense.

The judgment (order of commitment) is affirmed.

Gilbert, P. J., and Yegan, J., concurred.

A petition for a rehearing was denied November 2, 2006, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 24, 2007, S147898. Moreno, J., did not participate therein. Kennard, J., was of the opinion that the petition should be granted.