[No. S159410. Mar. 8, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
ROY COBB, JR., Defendant and Appellant.

[black rectangles]

## COUNSEL

Barbara A. Smith, under appointment by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Steve Oetting, Sharon L. Rhodes, Bradley A. Weinreb and Robin Derman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CORRIGAN, J.**—Having served his sentence for assault with a deadly weapon, defendant Roy Cobb, Jr., was committed in 2005 to a state hospital for treatment as a mentally disordered offender (MDO). After that commitment ended, a jury found that his condition persisted, and his commitment was extended in this proceeding.[1] On appeal, defendant contended he was denied due process because he remained confined while his extension trial was continued, without good cause, beyond his scheduled release date.

As we will explain, several issues presented here have been effectively resolved in the companion case, where they arose in the context of a commitment following a verdict of not guilty by reason of insanity (NGI). (See *People v. Lara* (2010) 48 Cal.4th 216 [106 Cal.Rptr.3d 208, 226 P.3d 322] (*Lara*).)

This case differs from *Lara*, in that here the Court of Appeal held that the original finding that defendant was an MDO justified his confinement until the extension petition was tried, even if good cause was not shown for continuing his trial beyond his scheduled release date. It reasoned: "Essentially, there has *already been* a determination that the defendant is an MDO; at the trial, the prosecution simply must prove that the defendant is *still* an MDO."

---

[1] The record does not reflect whether defendant exercised his right to a jury trial with regard to his first commitment. (See Pen. Code, § 2966, subd. (b).) Further statutory references will be to the Penal Code.

The Court of Appeal erred. It failed to acknowledge that the critical question at an extension trial is an MDO's *current* condition. (§ 2972, subd. (c).)

## I. FACTUAL AND PROCEDURAL BACKGROUND

A prisoner certified as an MDO is treated by the State Department of Mental Health as a condition of parole. (§ 2962.) Unless good cause is shown, at least 180 days before parole is to end, the medical director of the state hospital "shall" inform the district attorney in writing if the parolee's "severe mental disorder is not in remission or cannot be kept in remission without treatment." (§ 2970.) The district attorney "may" then petition the superior court for another year of treatment. (*Ibid.*) The trial on the extension petition "shall" begin at least 30 calendar days before "the time the person would otherwise have been released, unless the time is waived by the person or unless good cause is shown." (§ 2972, subd. (a) (section 2972(a).) If the patient is found to have a severe mental disorder that is not in remission or cannot be kept in remission without treatment, and by reason thereof represents a substantial danger of physical harm to others, the patient shall be recommitted for one year. (§ 2972, subd. (c).)

Defendant's parole release date was May 27, 2006. The district attorney filed a petition for continued treatment on March 6, and the trial began on June 19. Thus trial did not begin 30 days before the release date, and defendant was held an additional 23 days before his trial did begin.

On April 24, 2006, defendant's counsel announced that she was ready for trial and asked to proceed "forthwith."

The People replied that the assigned deputy, Charles Kenyon, was unavailable because he was at an out-of-town conference. In addition, Kenyon had "three criminal trials set that should go before this matter. He's requesting the last week of May for this case."

Defense counsel objected to the continuance on both statutory and constitutional grounds. "[I]n order to be in compliance with Penal Code [section] 29[7]2, subdivision (a), he would have to proceed to trial by May the 24th, which given everything else that is going on with the Court's calendar, it's unlikely that the Court is going to be available on May the 24th, and we will have yet another MDO that has not gone to trial in an expeditious fashion."

When the court indicated its intention to continue the case to May 2, 2006, defense counsel elaborated on her objection. Defendant was in custody.

Trying the extension petition after his current term expired would violate his rights to liberty, due process, and equal protection under both the state and federal Constitutions.

On May 2, defense counsel was again ready. The court said it would trail the case until May 4 because it was trying another case. Noting that the section 2972(a) 30-day deadline had already passed, defense counsel renewed her statutory and constitutional objections. The objections were overruled.

On May 4, the defense again announced ready. The deputy district attorney said that the treating physician was unavailable until June 9. Pointing out that defendant's term would have expired by that time, defense counsel objected to the continuance and moved to dismiss the extension petition. "This is a classic example of the ongoing problem with the district attorney's office," she argued. "They file these cases at the last minute, and then they're not able to proceed in a timely fashion as is required by [section 2972(a) and due process]." The court overruled the objection and denied the dismissal motion, finding good cause for the continuance: "Number one, this Court is in trial and has a priority criminal case coming at the conclusion of this trial. Plus the doctor is not available until June 9."

On May 26, defense counsel moved for defendant's release on bail because his parole term would expire the next day. Counsel argued that nothing in section 2972(a) authorized keeping defendant in custody when parole ended. The motion was denied.

On June 9, defense counsel was again ready and renewed her motions for release and dismissal, noting that defendant's term had expired. The deputy district attorney sought another week's continuance for two reasons. He was engaged in another trial. The treating physician, Dr. Rosten, was under court order to perform an examination in another case that day and had been subpoenaed in two other cases for the following week. Defense counsel noted that the case had already been continued for weeks because of Dr. Rosten's trip to Spain. "I think if the Court were to order this trial to begin, that the district attorney would either get Dr. Rosten here or get someone else here to say what it is they think they need to say about Mr. Cobb. If he's as dangerous as the district attorney would lead the Court to believe, then it would seem to me that there would be more than one single solitary doctor in the whole wide world that could come in and talk about the relevant issues, particularly when Dr. Rosten has been in Spain and obviously someone else would have been treating him."

The motions to dismiss were denied. "The Court finds there's good cause. The Court is . . . engaged in trial. There's no other court available. The

district attorney is engaged in trial. The witness is not available." The court continued the case until June 15. Defense counsel reminded the court that defendant was being kept in custody beyond his scheduled release date and that the court was giving priority to prosecutions of defendants who were not in custody.

On June 15, Dr. Rosten was still unavailable, and defendant had not been transported to court. Defense counsel yet again moved for dismissal and release. The court denied the motions and trailed the matter until the following Monday, June 19.

Jury selection began on June 19. On June 22, 2006, the jury found defendant to be an MDO and his commitment was extended. The Court of Appeal affirmed.

■ We hold: (1) At the end of his commitment, defendant was entitled, as a matter of due process, to release pending trial on the extension petition, unless good cause to continue the trial was shown or he waived time. (2) The court did not lose jurisdiction to try him, however. (3) He is not now entitled to release.

## II.   DISCUSSION

### A.   *The Statutory Deadline for Beginning Trial Is Directory*

In *Lara, supra,* 48 Cal.4th 216, the defendant was tried for falsely imprisoning a child, found not guilty by reason of insanity, and committed to a state hospital. In a proceeding to extend his commitment, the statutory deadlines for filing the extension petition and commencing trial were not met. The defendant contended the trial court thereby lost jurisdiction to try the case because the deadlines were mandatory. We rejected this contention, concluding the deadlines were directory. (*Id.* at pp. 224–228.)

■ One of the grounds for our conclusion was that section 1026.5, subdivision (a)(2) expressly states the time limits set out in that section "are not jurisdictional." The statute setting out the time limit for commencing an MDO recommitment trial does not have a similar disclaimer. (See § 2972.) However, this difference does not necessarily indicate the Legislature intended this deadline to be mandatory. Unless the Legislature clearly expresses a contrary intent, time limits are typically deemed directory. (*Lara, supra,* 48 Cal.4th at p. 225; *People v. Allen* (2007) 42 Cal.4th 91, 101–102 [64 Cal.Rptr.3d 124, 164 P.3d 557] (*Allen*).)

■ Moreover, the other factors we relied upon in *Lara* to conclude the Legislature intended the NGI time limits to be directory are also present here.

The Legislature's failure to include a penalty or consequence for noncompliance with the NGI statute's time limit indicates that the requirement is directory rather than mandatory. (*Lara, supra,* 48 Cal.4th at p. 227; *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1145 [43 Cal.Rptr.2d 693, 899 P.2d 79]; *Edwards v. Steele* (1979) 25 Cal.3d 406, 410 [158 Cal.Rptr. 662, 599 P.2d 1365].) Like the parallel provision governing NGI recommitment proceedings, section 2972 contains no indication that an MDO extension trial may not take place if the 30-day deadline is not satisfied. Indeed, the statute itself provides that its time limit is not binding if good cause is shown for not having met it, or if the defendant waives time. (See *Lara, supra,* 48 Cal.4th at p. 227.)

Finally, the purposes of the MDO recommitment procedure would be defeated by holding the time limit mandatory. As we said in *Lara* regarding the NGI recommitment procedure: "Holding it to be mandatory would mean that a court, faced with a filing deadline missed for good cause, would be powerless to extend treatment under the statute no matter how great the defendant's need or the danger release might pose to the public. Such an interpretation would run counter to the very purposes of the NGI statutes and the provision for extension of commitment. It would elevate the secondary benefit to the defendant derived from the time limit over the fundamental purposes of the NGI provisions, to ensure that needed treatment is provided and the public protected. (Cf. [*People v.*] *Williams* [(1999)] 77 Cal.App.4th [436,] 451 [92 Cal.Rptr.2d 1] [construing the time limit provisions of the Mentally Disordered Offender Act].) [Fn. omitted.]" (*Lara, supra,* 48 Cal.4th at p. 228.)

### B. *Due Process*

Our due process analysis in *Lara, supra,* 48 Cal.4th 216, began with the proposition that a " 'root requirement' of due process is that an individual be given an opportunity for a hearing *before* being deprived of any significant liberty or property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event. (*Boddie v. Connecticut* (1971) 401 U.S. 371, 379 [28 L.Ed.2d 113, 91 S.Ct. 780]; see *In re Roger S.* (1977) 19 Cal.3d 921, 937 [141 Cal.Rptr. 298, 569 P.2d 1286].)" (*Id.* at p. 229.)

In *Lara,* we concluded that the due process question should be evaluated on a case-by-case basis. (*Lara, supra,* 48 Cal.4th at p. 232.) The reason for a delay should be balanced against its prejudicial effect. A late extension petition filing potentially gives rise to two types of prejudice: inability to prepare for trial in the remaining time, and involuntary commitment beyond the release date. (*Ibid.*) Lara suffered both types of prejudice. The petition to

extend his commitment was filed so late that he did not have adequate time to prepare for trial before his term ended. There was no good cause for the late filing, and he did not waive time. Finally, he was subjected to nearly seven months of additional confinement after his release date, but before the adjudication to which he was entitled. (*Id.* at pp. 232–235.)

Here, Cobb was not even given the opportunity to go to trial before his term ended. Not only was the 30-day deadline for trial commencement missed, the trial began 23 days after defendant's scheduled release date. He objected to each continuance. On appeal, he claimed the grant of continuances without good cause denied him due process.

The Court of Appeal did not directly address this claim. Instead, it assumed an absence of good cause, but concluded that defendant was not denied due process.[2] It reasoned that defendant had notice and an opportunity to be heard when he was initially found to be an MDO. "This notice and opportunity to be heard is also constitutionally sufficient to allow the defendant to be confined—even after his or her release date—until the end of [an extension] trial. Essentially, there has *already been* a determination that the defendant is an MDO; at the trial, the prosecution simply must prove that the defendant is *still* an MDO."

The Court of Appeal's analysis would render the procedural safeguards of notice and timely trial merely advisory.

■ "The MDO Act establishes a comprehensive scheme for treating prisoners who have severe mental disorders that were a cause or aggravating factor in the commission of the crime for which they were imprisoned. (See § 2960.) The act addresses treatment in three contexts—first, as a condition of parole (§ 2962); then, as continued treatment for one year upon termination of parole (§ 2970); and finally, as an additional year of treatment after expiration of the original, or previous, one-year commitment (§ 2972)." (*People v. Garcia* (2005) 127 Cal.App.4th 558, 563 [25 Cal.Rptr.3d 660].)

■ Section 2962 lists six criteria that must be met for the *initial* MDO certification. "The trial court must consider whether 1) the prisoner has a severe mental disorder; 2) the prisoner used force or violence in committing the underlying offense; 3) the severe mental disorder was one of the causes or an aggravating factor in the commission of the offense; 4) the disorder is not

---

[2] We need not resolve the question whether good cause was shown for continuing defendant's trial beyond his release date. As we explain, even without good cause for the continuances, the trial court retained jurisdiction to conduct the extension hearing (see part II.A., *ante*), and the fact that defendant was not released did not affect the validity of the eventual extension order (see part II.C., *post*).

in remission or capable of being kept in remission without treatment; 5) the prisoner was treated for the disorder for at least 90 days in the year before his release; and 6) by reason of his severe mental disorder, the prisoner poses a serious threat of physical harm to others. (§ 2962, subds. (a)–(d)(1).)" (*People v. Francis* (2002) 98 Cal.App.4th 873, 876–877 [120 Cal.Rptr.2d 90] (*Francis*); accord, *People v. Merfield* (2007) 147 Cal.App.4th 1071, 1075, fn. 2 [54 Cal.Rptr.3d 834] (*Merfield*); *People v. Hannibal* (2006) 143 Cal.App.4th 1087, 1094 [49 Cal.Rptr.3d 645].)

Three of the criteria are relevant *only* to the initial certification. These three "concern past events that once established, are incapable of change: whether the prisoner used force or violence in committing the underlying offense; whether he was treated for the disorder for at least 90 days in the year before his release; and whether his severe mental disorder was one of the causes or an aggravating factor in the commission of the underlying offense." (*Francis*, *supra*, 98 Cal.App.4th at p. 879; accord, *Merfield*, *supra*, 147 Cal.App.4th at pp. 1075–1076.)

■ By contrast, the three criteria that must be satisfied for continued treatment relate, not to the past, but to the defendant's current condition. At an extension proceeding, the questions are: Does the defendant continue to have a severe mental disorder? Is the disorder in remission? Does the defendant continue to represent a substantial danger of physical harm to others? (§ 2972, subd. (c).) A defendant's condition a year earlier is relevant but not dispositive of these questions. Therefore, contrary to the Court of Appeal's conclusion, the notice and opportunity to be heard that defendant was given when he was initially committed was no substitute for the hearing to evaluate whether his current condition justified extension of his commitment.

■ Accordingly, we hold that, without a time waiver or good cause, section 2972 does *not* permit continued confinement when an extension trial does not begin before the scheduled release date.[3] "As we explained in *Allen*, *supra*, 42 Cal.4th 91, if an extension petition is not filed before the current commitment ends, the defendant is no longer subject to constraint under the NGI or MDO statutes. If a petition is filed before the expiration date, but too late to allow a reasonable time for trial preparation," the defendant may be entitled to release pending trial on the extension petition. (*Lara*, *supra*, 48 Cal.4th at pp. 235–236.)

---

[3] As we noted in *Lara*, "[a] defendant released from commitment under the NGI or MDO statutes may, however, be subject to confinement under the LPS Act. A defendant who falls under the provisions of the LPS Act is held in a therapeutic setting and is entitled to the more stringent timeframes and procedural protections the LPS Act provides. This approach comports with the intent of the Legislature, honors due process, and ensures both that the defendant will be treated and the public protected. [Citations.]" (*Lara*, *supra*, 48 Cal.4th at p. 236.)

The Attorney General admits there is no "express language" in section 2972 authorizing such confinement. However, he notes that the purpose of the MDO Act is to protect the public by confining MDO's until the severe mental disorders causing or aggravating their crimes are in remission and can be kept in remission. (See § 2960.) Protection of the public is paramount, the Attorney General argues, and justifies an MDO's continued confinement under the circumstances posited by our question.

■ The Attorney General is only partially correct. Public protection is an important purpose of the legislation. Another is protection of the patient's rights. "Like other involuntary civil commitment schemes, the MDO Act's comprehensive statutory scheme . . . represents a delicate balancing of countervailing public and individual interests." (*Allen, supra,* 42 Cal.4th 91, 98.) Section 2972(a) protects an MDO's interests by requiring, among other things, that a commitment extension trial begin "no later than 30 calendar days prior to the time the person would otherwise have been released, unless the time is waived by the person or unless good cause is shown." The Attorney General's construction would render the waiver/good cause provisions surplusage, violating the rule of construction that courts should, if possible, accord meaning to every word and phrase in a statute to effectuate the Legislature's intent. (*Ste. Marie v. Riverside County Regional Park & Open-Space Dist.* (2009) 46 Cal.4th 282, 289 [93 Cal.Rptr.3d 369, 206 P.3d 739]; *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 991–992 [73 Cal.Rptr.2d 682, 953 P.2d 858].)

The Attorney General notes that section 2972(a) "states unequivocally and without qualification that '[t]he court shall conduct a hearing on the petition under Section 2970 for continued treatment.' " He argues that "[t]his directive evidences that, even without good cause or a time waiver, this hearing must occur to ensure the public is safe from MDO's." The Attorney General reads too much into the statute. To be sure, the law provides that a hearing be held. It also explicitly requires that notice be timely given and the hearing begin before the scheduled release date, unless the stated exceptions are met.

### C. *Remedy*

No relief is available in this case. The court retained jurisdiction to try the petition. (See part II.A., *ante.*) The fact that defendant was not released did not affect the validity of the eventual extension order. (*Lara, supra,* 48 Cal.4th at p. 236.)

## III. DISPOSITION

The judgment of the Court of Appeal affirming the MDO recommitment order is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., and Moreno, J., concurred.

**BAXTER, J., Concurring.**—Defendant Roy Cobb, Jr., was convicted of assault with a deadly weapon in 2001. The present appeal is from a judgment extending Cobb's commitment under the Mentally Disordered Offender Act (Pen. Code, § 2960 et seq.). Although defense counsel stated at each court appearance, beginning over a month before defendant's prior commitment expired, that she was ready for trial on the petition to extend the commitment, that trial did not actually begin until 23 days after defendant's prior commitment had expired. The trial court denied defendant's request for release that was made at the expiration of his prior commitment, and defendant was forced to remain in custody pending trial. Defendant claims that he was prejudiced by the delayed trial and by his continued confinement and that the delay was without good cause.

In *People v. Lara* (2010) 48 Cal.4th 216 [106 Cal.Rptr.3d 208, 226 P.3d 322], this court upheld a judgment extending a commitment under Penal Code section 1026.5 where the filing of the petition and the commencement of the trial were delayed, the delay was without good cause, and the defendant similarly remained in custody pending trial even after the expiration of his prior commitment. In my separate concurring opinion, I justified that decision on the ground that Lara had failed to establish actual prejudice from the delayed filing of the petition or start of the trial, or from his continued confinement pending the trial. I found, in particular, that Lara had been granted sufficient time to prepare for trial and that there was no indication in the record—indeed, not even an allegation—that his continued confinement pending trial had affected the fairness of the proceeding or undermined confidence in the outcome. And I observed further that although a defendant involuntarily confined beyond his maximum commitment date without good cause and without statutory authorization "may be entitled to civil damages, . . . such confinement could not invalidate a trial conducted under fair procedures and resulting in an outcome that is reliable and unaffected by the error." (*People v. Lara, supra,* 48 Cal.4th at p. 239 (conc. opn. of Baxter, J.).)

The majority opinion deems *Lara* fully sufficient to dispose of this appeal. Thus, the opinion does not address the question whether good cause was shown "for continuing defendant's trial beyond his release date" (maj. opn., *ante,* at p. 251, fn. 2) because it concludes that defendant was not prejudiced by the delayed trial (even assuming the delay was unjustified) or by his continued confinement (even assuming the confinement was unlawful). Although its finding that defendant was not prejudiced is thus critical to its conclusion, the majority opinion's discussion of prejudice nonetheless consists of exactly one sentence—"The fact that defendant was not released did

not affect the validity of the eventual extension order"—and a citation to *Lara.* (Maj. opn., *ante*, at p. 253.) Although I agree with the ultimate conclusion that defendant was not prejudiced, I disagree that this analysis is sufficient to dispose of defendant's claim for relief.

Unlike Lara, defendant Cobb argues that the failure to grant his request for release upon the expiration of his prior commitment, when combined with the lateness of his trial, was unfair in specific and concrete ways and caused him actual prejudice. Defense counsel informed the court on the day jury selection began that it still had not received the curriculum vitae of the prosecution expert, nor had it received defendant's medical records "even though the Court previously ordered them to be sent down here from Atascadero so that Dr. Kania could use them to evaluate [defendant]." In addition, defense counsel complained that "Dr. Kania has not been able to evaluate [defendant] because we haven't gotten the records." When the court inquired whether the case was ready for trial in light of these circumstances, defense counsel reminded the court that "with [defendant] continuing to be in custody," "the appropriate consequences are not that we delay the trial yet again."

A review of the entire record, however, does not support defendant's claim that his continued confinement forced defense counsel to go to trial earlier that she would have liked and without adequate time to prepare for trial. The district attorney filed a petition to extend defendant's commitment on March 6, 2006—nearly 12 weeks before the expiration of defendant's prior commitment and three and one-half months before trial actually began. This was ample time to permit preparation of the defense. Moreover, defense counsel announced that she was ready for trial on April 24, 2006, over a month before the prior commitment expired, and asked that the matter proceed "forthwith"—even though she had not yet received these documents or conducted an evaluation of defendant by an expert. Indeed, counsel continued to say she was ready for trial at each succeeding court appearance, although the defense had not yet received those documents or had defendant evaluated by an expert. Finally, the defense did ultimately receive the hospital records and was granted an extensive opportunity to examine the prosecution expert's qualifications outside the jury's presence. These circumstances seriously undercut defendant's claim that he was forced to go to trial unprepared because of his continued confinement.

In sum, the current record does not demonstrate that defendant's complaints about the prosecution's expert, the prosecution's incompetence in providing discovery, and various actions taken by the court and court staff are connected to the delayed trial or to his continued confinement pending trial, whether in the state hospital or in the county jail, nor has he shown that either the delay in the trial or his continued confinement "interfered with his ability

to prepare his defense or otherwise undermined the reliability of the verdict. Hence, he suffered no prejudice." (*People v. Lara, supra*, 48 Cal.4th at p. 238 (conc. opn. of Baxter, J.).)

For these reasons, I concur in the judgment.