Filed 9/17/13  P. v. Mackey CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID ERNEST MACKEY,<br><br>    Defendant and Appellant. | D063339<br><br><br><br>(Super. Ct. No. CR143873) |

APPEAL from an order of the Superior Court of San Diego County, Amalia L. Meza, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Ronald Jakob, and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

David Ernest Mackey appeals from an order extending his commitment to the State Department of State Hospitals, formerly the Department of Mental Health (Department), as a mentally disordered offender (MDO) (Pen. Code,[1] § 2960 et seq.). He contends we must set aside the order because there is insufficient evidence he poses a substantial risk of physical harm to others. We disagree and affirm the order.

BACKGROUND

*People's Evidence*

In November 2011, after a lengthy period of incarceration and parole for forcible rape (§ 261, subd. (a)(2)), Mackey was committed to the Department as an MDO. In July 2012, the People petitioned to extend Mackey's commitment for an additional year.

Mackey's prior criminal history includes a commitment in 1974 to the California Youth Authority for rape, charges in 1977 for rape and sodomy upon a person under the age of 14, and a charge in 1981 for assault with intent to commit rape. He committed the forcible rape offense underlying his present commitment one day after being released from prison.

As described by the People's witnesses, the facts of the forcible rape offense were: Mackey entered the apartment of a 67 year-old woman with emphysema. He brought her a bouquet of flowers and placed them in a vase, telling her he had heard she was sick and had come to take care of her. He then forcibly raped her. Afterwards, he left his jacket in her apartment, but took the flowers and tucked them into his sweater. Police later found

_____

1       Further statutory references are also the Penal Code unless otherwise stated.

him standing in the lobby of the apartment building talking on the phone with the flowers still on his person.

At the trial on the petition, the People presented evidence from two court-appointed psychologists. Dr. Craig Teofilo diagnosed Mackey with schizophrenia, paranoid type. He also diagnosed Mackey with opiate abuse because of Mackey's 20-plus-year history of heroin use, and found Mackey exhibited antisocial personality features.

According to Dr. Teofilo, schizophrenia is characterized by such symptoms as hallucinations, delusions, disorganized speech, disorganized behavior, flattening of affect, and poverty of speech. The disorder substantially impairs a person's thoughts, perception of reality, judgment, and behavior. Dr. Teofilo believed Mackey exhibited symptoms of schizophrenia at the time he committed the forcible rape.

Dr. Teofilo believed Mackey's schizophrenia was not in remission because, even on medication, he continued to exhibit symptoms, including paranoia, persecutory delusions, and grandiose delusions. Dr. Teofilo also believed Mackey's schizophrenia could not be kept in remission without continued treatment and Mackey did not have a plan for obtaining treatment if released because he did not think he had a mental illness.

Although Mackey told Dr. Teofilo he had perfect medication compliance, Mackey's records indicated that, until March 2012, he was under a court order for involuntary medication because of prior noncompliance. Dr. Teofilo believed Mackey began taking his medication voluntarily in March 2012 only because "he knows that he needs to—that that's one of the steps in order for him to get out of the hospital and to get

3

off of MDO commitment." Dr. Teofilo did not believe Mackey would take his medication voluntarily if released because Mackey did not think he needed medication.

If Mackey stopped taking his medication, Dr. Teofilo believed Mackey could decompensate psychiatrically, his symptoms could get worse, he could return to substance abuse, and he could act out violently. In the past, when Mackey stopped taking his medication, he decompensated psychiatrically and criminally offended.

Dr. Teofilo was additionally concerned Mackey had not engaged in sex-offender treatment, which Dr. Teofilo believed was necessary for Mackey's reintegration into the community. Mackey had not engaged in this treatment because he steadfastly denied ever committing a sex offense.

Dr. Teofilo believed Mackey posed a substantial danger of physical harm to others because of Mackey's lengthy history of violence, his aggressive behavior while incarcerated, the probability he would stop taking medication if released, the possibility he would resume substance abuse, his failure to recognize he had hurt people in the past, and his demonstrated willingness to disregard the law and hurt people.

Dr. Joni Johnston believed Mackey suffered from paraphilia not otherwise specified and schizophrenia, disorganized type. Like Dr. Teofilo, Dr. Johnston believed Mackey exhibited symptoms of schizophrenia when he committed the forcible rape offense. However, she believed Mackey's schizophrenia was in partial remission from medication because his behavior was less disorganized and it appeared he was no longer experiencing auditory hallucinations, although he continued to experience delusions. Because of Mackey's penchant for treatment noncompliance, Dr. Johnston did not believe

4

Mackey could be effectively treated on an outpatient basis without structure or a clear plan.

Also like Dr. Teofilo, Dr. Johnston believed Mackey posed a substantial danger of physical harm to others if released. She based this belief on Mackey's stature, his lack of insight into his mental illness, the connection between his mental illness and his criminal behavior, his failure to take responsibility for his criminal behavior, and his reluctance to continue taking medication. Moreover, she shared Dr. Teofilo's concern Mackey would become psychotic if he stopped taking medication and would once again incorporate his delusions into some kind of sexual offending. Mackey's paraphilia contributed to her concern because paraphilia requires a significant amount of treatment, Mackey has not progressed in his treatment, and he does not have a plan for controlling his paraphilia if released because he does not think he has a problem.

While Mackey had no history of aggressive behavior in the year preceding the trial, Dr. Johnston believed Mackey's medication and structured hospital environment were at least partially responsible for his lack of aggressiveness. Historically, when Mackey failed to take medication, his agitation and hostility increased. Mackey's past substance abuse was less of a concern to Dr. Johnston because Mackey had completed substance abuse treatment and had been abstinent for many years.

*Mackey's Evidence*

Mackey testified he was never addicted to heroin and did not suffer from schizophrenia or paraphilia. However, in responding to cross-examination questions about his schizophrenia diagnosis and other matters, he exhibited symptoms Dr. Teofilo

described as indicative of schizophrenia, including persecutory delusions and grandiose delusions.

Mackey also testified he did not need medication to function in society, but he voluntarily took it because otherwise he would be forced to take it. He denied ever being noncompliant with his medication regimen. He further testified that, if the court released him, he would continue taking the medication until he could prove his innocence of the forcible rape charge.

Although he successfully completed various group programs at the state hospital, he admitted he had not progressed in his sex offender program. He explained he could not progress in this program because he was innocent of the forcible rape crime and the other sexual offenses attributed to him and, consequently, will not admit to committing them.

In addition, he confirmed he did not want to participate in a conditional release program or go to a board and care facility because he wanted to take care of himself. If released, he planned to move to Nebraska to live with his ex-wife. He planned to support himself with his savings, Social Security benefits, and employment income. While he had not lived in the community for 20 years, he did not believe he would have any difficulty finding a job. Finally, he testified he did not intend to put himself in a position to get arrested again and he had no desire to cause harm to himself or others.

*Recommitment Order*

After considering the parties' evidence and arguments, the court found beyond a reasonable doubt Mackey suffered from a severe mental disorder that was not in

6

remission or could not be kept in remission without treatment and that, because of the disorder, he posed a substantial danger of physical harm to others. Consequently, the court ordered his commitment to the state hospital extended to November 25, 2013.

DISCUSSION

For Mackey to be validly recommitted under the MDO law, the People had to establish (1) he had a severe mental disorder, (2) his mental disorder was not in remission or could not be kept in remission without treatment, and (3) because of his mental disorder, he posed a substantial danger of physical harm to others. (§ 2972, subd. (c); *People v. Cobb* (2010) 48 Cal.4th 243, 252; *People v. Beeson* (2002) 99 Cal.App.4th 1393, 1398-1399.) Mackey contends we must set aside the recommitment order because there is insufficient evidence he posed a substantial danger of physical harm to others because of his mental disorder.

"In considering the sufficiency of the evidence to support MDO findings, an appellate court must determine whether, on the whole record, a rational trier of fact could have found that defendant is an MDO beyond a reasonable doubt, considering all the evidence in the light which is most favorable to the People, and drawing all inferences the trier could reasonably have made to support the finding. [Citation.] ' " 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends. [Citation.] Thus, if the [finding] is supported by substantial evidence, we must accord due deference to the trier of fact and not substitute our evaluation of a witness's credibility for that of the fact

7

finder. . . .' [Citation.]" ' [Citations.]" (*People v. Clark* (2000) 82 Cal.App.4th 1072, 1082-1083.)

A person poses a substantial danger of physical harm to others if the person has serious difficulty controlling dangerous behavior. (*People v. Kendrid* (2012) 205 Cal.App.4th 1360, 1366 [discussing an analogous provision in the not guilty by reason of insanity law].) This fact may be proven by the predictions of mental health experts. (*In re Qawi* (2004) 32 Cal.4th 1, 24 ["substantial danger of physical harm to others" appears to mean a prediction of future dangerousness by mental health professionals].)

Here, both Drs. Teofilo and Johnston testified Mackey poses a substantial danger of physical harm to others because of the relationship between his mental illness and prior criminal behavior, his lack of insight into his mental illness and prior criminal behavior, and his penchant for not complying with his medication regimen. This evidence is sufficient to support a finding Mackey has difficulty controlling dangerous behavior and, therefore, poses a substantial danger of physical harm to others. (*People v. Valdez* (2001) 89 Cal.App.4th 1013, 1018 [expert evidence that a person is predisposed for decompensation and dangerous behavior because of longstanding mental illness, poor insight, and poor understanding of medication therapy supports a finding the person poses a substantial danger of physical harm to others].)

Although Mackey may not have committed any aggressive or threatening acts since his commitment to a state hospital, this fact does not preclude a finding he would pose a substantial danger if released. (See, e.g., *People v. Kendrid*, *supra*, 205 Cal.App.4th at p. 1370.) The hospital provides him with a structured environment and

8

ensures he receives his medication. If released, he would not be in a structured environment, and both Drs. Teofilo and Johnston believed he would not take his medication because he does not think he has a mental illness or that he needs medication to function. His testimony effectively corroborated their belief. Accordingly, we conclude Mackey has failed to establish there was insufficient evidence he posed a substantial danger of physical harm to others.

DISPOSITION

The order is affirmed.

McCONNELL, P. J.

WE CONCUR:

HALLER, J.

O'ROURKE, J.

9