Filed 10/29/13  P. v. Phan CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039246 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. CC242072) |
| v. | |
| DILLON VAN PHAN, | |
| Defendant and Appellant. | |

Defendant Dillon Van Phan appeals from an order extending his commitment as a mentally disordered offender (MDO) for another year pursuant to Penal Code sections 2970 and 2972.[1]  Defendant contends that no substantial evidence supports the trial court's finding that he continued to represent a substantial danger of physical harm to others, and that therefore the extension of his commitment violates due process.  We disagree and will affirm the order extending defendant's commitment.

**BACKGROUND**

On July 3, 2012, the District Attorney filed a petition to extend defendant's MDO commitment for one year.  (See § 2970.)  The petition alleged the following procedural history.  In 2002, defendant committed battery with serious bodily injury (§ 243, subd. (d)) and injury to an elder causing death or great bodily injury (§ 368, subd. (b)(1)).

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Defendant was convicted of those offenses and sentenced to an eight-year prison term. He was admitted to Atascadero State Hospital in 2008 (see § 2684), and he was found to be an MDO (see § 2962) on January 28, 2009. Defendant's commitment was scheduled to expire on January 28, 2013.

A bench trial was held on January 2, 2013. At trial, psychologist Kevin M. Perry, Ph.D., testified for the prosecution; defendant presented no witnesses.

Dr. Perry noted that when conducting an MDO evaluation, he reviews a patient's medical and criminal records, interviews the patient, and talks to the patient's treatment team. Dr. Perry had interviewed defendant on May 31, 2012, and he had spoken with defendant again the week before trial.

Dr. Perry provided his "understanding" of the facts underlying defendant's criminal offenses. Defendant "was on a public bus when he attacked a 77-year-old citizen. He kicked the citizen, the man fell to the ground and suffered a head injury as a result. [Defendant] continued to kick and strike the elderly victim while he was on the ground, and there didn't seem to be any provocation for that attack. They were strangers, according to the probation officer's report." When questioned about the incident, defendant told Dr. Perry "that it was a case of mistaken identity; that he didn't do the crime."

Dr. Perry explained that defendant had been diagnosed with "schizophrenia disorganized type." In Dr. Perry's opinion, defendant needed medication to treat his mental illness. However, defendant did not believe that he had a mental disorder, and he had been "refusing his medications for nearly the entire course of his treatment at the state hospital." He had been medication-compliant only for a brief period in October and November of 2012. During that period, defendant was described in the medical records "as being more coherent and more logical in his speech" than "previously or since."

When Dr. Perry spoke with defendant on December 27, 2012, defendant was not taking his medication. Defendant presented with two kinds of symptoms. First, he had

2

"thought disorganization," which manifested in rambling, illogical, and irrelevant speech. Second, he had "some elements of paranoia or possible delusional ideation," telling Dr. Perry that "he was being tortured at the state hospital." Defendant showed no insight into having a mental disorder, and he claimed he was "all done" with the medication.

The components of defendant's treatment plan included group therapy sessions and regular meetings with his treatment team. Defendant had attended about 75 percent of the group sessions he was supposed to have attended during the prior year, although he did attend his treatment team meetings. The treatment records reflected defendant had made "minimal progress" on a plan for managing his symptoms.

Dr. Perry explained that his ultimate opinion – that defendant continued to present a substantial risk of physical harm to others – was based on defendant's "history of violent behavior towards others during periods of psychiatric instability." He referred to defendant's criminal offenses and noted that "[t]here was evidence of symptoms around that time," since defendant had been found incompetent to stand trial. Defendant had "continued to show similar kinds of symptoms recently," in that his speech was still disorganized and he continued to express paranoid ideas. Since defendant refused to take medication to control those symptoms, he would be dangerous if released to a less structured setting.

Dr. Perry acknowledged that defendant had not been aggressive towards other patients or staff at Atascadero, even when non-compliant with his medication and even when he had been "ridiculed" by other patients, who had apparently targeted defendant because he was not aggressive. However, Dr. Perry pointed out that the hospital was a controlled setting, "where there are police officers around to deter acts of violence" as well as "nurses and doctors available 24 hours a day to help [defendant] manage the kinds of mental health problems that he has." The lack of such "external controls" in the community is what would make defendant dangerous if released.

At the conclusion of the trial, the court found the recommitment petition true beyond a reasonable doubt and ordered defendant committed for another one-year period.

## DISCUSSION

Defendant contends that no substantial evidence supports the trial court's finding that he continued to represent a substantial danger of physical harm to others, and that therefore the extension of his commitment violates due process.

### A.     The MDO Act and Commitment Extensions

"The Mentally Disordered Offender Act (MDO Act), enacted in 1985, requires that offenders who have been convicted of violent crimes related to their mental disorders, and who continue to pose a danger to society, receive mental health treatment during and after the termination of their parole until their mental disorder can be kept in remission.  (Pen. Code, § 2960 et seq.)"  (*In re Qawi* (2004) 32 Cal.4th 1, 9.)

For an initial MDO commitment, " '[t]he trial court must consider whether 1) the prisoner has a severe mental disorder; 2) the prisoner used force or violence in committing the underlying offense; 3) the severe mental disorder was one of the causes or an aggravating factor in the commission of the offense; 4) the disorder is not in remission or capable of being kept in remission without treatment; 5) the prisoner was treated for the disorder for at least 90 days in the year before his [or her] release; and 6) by reason of his [or her] severe mental disorder, the prisoner poses a serious threat of physical harm to others.  [Citation.]' [Citations.]"  (*People v. Cobb* (2010) 48 Cal.4th 243, 251-252 (*Cobb*).)

For continued treatment as an MDO, the issues relate only to "the defendant's current condition."  (*Cobb, supra,* 48 Cal.4th at p. 252.)  Specifically, "continued treatment requires that the person satisfy certain criteria:  that (1) he [or she] continues to have a severe mental disorder; (2) his [or her] mental disorder is not in remission or cannot be kept in remission without treatment; and (3) he [or she] continues to present a

4

substantial danger of physical harm to others." (*People v. Beeson* (2002) 99 Cal.App.4th 1393, 1398-1399, fn. omitted (*Beeson*).)

On appeal, "[i]n reviewing a claim of insufficient evidence, we view the entire record in the light most favorable to the judgment and determine whether it discloses substantial evidence - - i.e., evidence that is reasonable, credible, and of solid value - - to support the [trier of fact's] finding." (*Beeson, supra,* 99 Cal.App.4th at p. 1398, fn. omitted.)

### B.    Analysis

Defendant contends there was no substantial evidence that he "continues to present a substantial danger of physical harm to others." (*Beeson, supra,* 99 Cal.App.4th at pp. 1398-1399.) He contends Dr. Perry's testimony was deficient in two respects. First, defendant claims that Dr. Perry's testimony about defendant's medication non-compliance was improperly based on hearsay. Second, defendant claims there was no evidence that defendant had tried and failed to control his dangerous behavior.

### 1.    Reliance on Hearsay

Defendant contends that Dr. Perry improperly relied on hearsay when he offered the opinion that defendant's non-compliance with his medication rendered him dangerous.

As noted above, Dr. Perry testified that in his opinion, defendant needed medication to treat his mental illness. When defendant objected to this testimony based on lack of foundation, Dr. Perry testified that although he was not a psychiatrist and did not prescribe medication, he had taken courses in psychopharmacology and was familiar with the medications used to treat psychotic mental disorders. The trial court overruled the objection.

Defendant reiterates his claim that Dr. Perry was "not qualified to determine [defendant's] need for particular medication," and he further asserts that Dr. Perry was

"essentially testifying to the opinion of the prescribing psychiatrist," who did not testify. He contends Dr. Perry could not base his opinion on such hearsay.

Respondent acknowledges that Dr. Perry's opinion about defendant's need for medication was based on information in his medical file – i.e., information about the medications that had been prescribed by someone else. Respondent contends Dr. Perry was entitled to rely on this information in rendering his opinion about "the consequences of [defendant's] refusal to take prescribed medication."

" 'An expert witness may express an opinion based on information without regard to the information's admissibility in evidence.' [Citations.] Mental health experts routinely rely on interview reports and observations of nontestifying experts. [Citations.] 'A qualified expert is entitled to render an opinion on the criteria necessary for an MDO commitment, and may base that opinion on information that is itself inadmissible hearsay if the information is reliable and of the type reasonably relied upon by experts on the subject. [Citations.] A trial court, however, may not admit an expert opinion based on information furnished by others that is speculative, conjectural, or otherwise fails to meet a threshold requirement of reliability.' [Citation.]" (*People v. Nelson* (2012) 209 Cal.App.4th 698, 707.)

Defendant relies primarily on *People v. Campos* (1995) 32 Cal.App.4th 304 (*Campos*), which also concerned an MDO commitment. In *Campos,* a doctor testified that "she relied on other medical evaluations and that the evaluations confirmed her opinion that appellant met the MDO criteria." (*Id.* at p. 307.) *Campos* held that such opinions and conclusions of nontestifying experts are inadmissible hearsay. (*Ibid.*)

In this case, Dr. Perry relied on a nontestifying doctor's medication prescription in support of his opinion that defendant's non-compliance with his medication rendered him dangerous if released. Unlike in *Campos,* here Dr. Perry did not testify that other experts had reached the same ultimate conclusions as he had. In this case, the underlying doctor's opinion was not specifically admitted for the truth of the matter, but as the basis

6

for Dr. Perry's opinion about defendant's dangerousness. As such, Dr. Perry was permitted to rely upon that hearsay in forming his opinion that defendant would be dangerous if released. (See *Campos, supra,* 32 Cal.App.4th at p. 308 [testifying psychiatrist "was properly allowed to testify that she relied upon the reports" of other experts "in forming her own opinions"].)

Even assuming that Dr. Perry was not entitled to rely on another doctor's opinion that defendant needed medication, there was other evidence supporting his opinion that defendant would be dangerous if released. He testified that defendant's medical records showed that defendant's symptoms were significantly improved during the period in which he complied with his medication. Dr. Perry was entitled to rely on the medical records in rendering his opinion that without medication compliance, defendant's schizophrenia would not be controlled, rendering defendant dangerous. (See *Campos, supra,* 32 Cal.App.4th at p. 309; *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735, 742 [hospital and medical records can be relied on for expert opinion testimony].) Further, Dr. Perry had interviewed defendant twice, including the week before trial. He had personally observed defendant's thought disorganization, paranoia or delusional ideation, lack of insight into his mental disorder, and claim to not need any medication. It is clear that even if Dr. Perry had not relied on another doctor's opinion about defendant's need for medication, he would have rendered the same opinion about defendant's dangerousness.

### 2.     Lack of Recent Dangerous Behavior

Defendant asserts that there was no evidence that he had "engaged in dangerous behavior in the past decade," which "confirmed that [he] was able to control his dangerous behavior, despite his mental illness." He cites *In re Howard N.* (2005) 35 Cal.4th 117 (*Howard N.*) for the proposition that an extension of a civil commitment requires evidence that the person has "serious difficulty controlling his dangerous behavior" as a result of mental illness. (See *id.* at pp. 128, 132.)

Importantly, the Legislature has specifically determined that no proof of recent dangerous behavior is required to support an MDO commitment or an extension of an MDO commitment. Under section 2962, subdivision (f), a finding that an MDO committee represents a " 'substantial danger of physical harm' does not require proof of a recent overt act." (§ 2962, subd. (f).)

In this case, although appellant has not exhibited violent behavior since his 2002 crimes, he continues to manifest similar psychiatric symptoms when he does not comply with his medication, which is most of the time. (See *People v. Sudar* (2007) 158 Cal.App.4th 655, 663 [extension of commitment under section 1026.5 supported by evidence that defendant "continued to suffer from the same delusion that was operating when he committed the arson that led to his institutionalization"].) Considering Dr. Perry's description of defendant's disorganized thoughts and paranoia, which he observed in May of 2012 and the week before trial, it appears unlikely that defendant could function effectively outside an institutional setting. (Cf. *People v. Sumahit* (2005) 128 Cal.App.4th 347, 353 ["The fact that defendant has not misbehaved in a strictly controlled hospital environment does not prove he no longer suffers from a mental disorder that poses a danger to others."].) Given the causal relationship between defendant's psychiatric symptoms and his violent behavior, combined with his refusal to take medication to treat his symptoms, there is substantial evidence to support the trial court's implied finding that defendant's mental disorder rendered him dangerous and that he would have "serious difficulty controlling his dangerous behavior" if released. (*Howard N., supra,* 35 Cal.4th at p. 132.)

## DISPOSITION

The January 2, 2013 order extending defendant's commitment as a mentally disordered offender is affirmed.

_____
BAMATTRE-MANOUKIAN, ACTING P.J.


WE CONCUR:




_____
MÁRQUEZ, J.




_____
GROVER, J.