Filed 5/23/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DAVID EARL MYERS,<br><br>    Petitioner,<br><br>            v.<br><br>THE SUPERIOR COURT OF KERN COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | F083570<br><br>(Super. Ct. No. FP004465A)<br><br><br>**OPINION** |

-ooOoo-

ORIGINAL PROCEEDINGS; petition for writ of mandate.  David R. Zulfa and Michael G. Bush, Judges.*

Pam Singh and Peter Kang, Public Defenders, and Crystal N. Ratliff, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Rob Bonta, Attorney General, Michael P. Farrell, Assistant Attorney General, Kari Ricci Mueller and Melissa Lipon, Deputy Attorneys General, for Real Party in Interest.

-ooOoo-

---

* Judge Zulfa presided on August 31, 2021; Judge Bush presided over all other hearings pertinent to this appeal.

# INTRODUCTION

The Mentally Disordered Offender Act (MDO Act) (Pen. Code,[1] § 2960 et seq.) "authorizes the Board of Parole Hearings to involuntarily commit individuals convicted of certain felony offenses for mental health treatment as a condition of parole. [Citation.] Commitment as a mentally disordered offender (MDO) may continue even after an offender's parole term has expired, so long as the district attorney makes a showing that the MDO's mental disorder is not in remission and that the MDO, because of the disorder, represents a substantial danger of physical harm. [Citations.]" (*People v. Foster* (2019) 7 Cal.5th 1202, 1205.) If that showing is made, the MDO's involuntary commitment extends for one year. (§ 2972, subd. (c).) To make the required showing, the district attorney must file a petition with the superior court (§ 2970, subd. (b)) and must file it prior to the termination of the MDO's commitment (§ 2972, subd. (e); *People v. Allen* (2007) 42 Cal.4th 91, 104 (*Allen*)). The petition must be "accompanied by affidavits specifying that treatment . . . has been continuously provided by the State Department of State Hospitals either in a state hospital or in an outpatient program." (§ 2970, subd. (b).) Once the petition is filed, trial must commence "no later than 30 calendar days prior to the time the person would otherwise have been released, unless the time is waived by the [MDO] or unless good cause is shown." (§ 2972, subd. (a)(2).) If the statutory deadline for commencing trial is not met, the trial court retains jurisdiction to try the matter. (*People v. Cobb* (2010) 48 Cal.4th 243, 249-250 (*Cobb*).) However, "when an extension trial does not begin before the scheduled release date," due process precludes "continued confinement" (*id*. at p. 252) and the MDO must be released from custody. If so released, the MDO is neither in the custody of the State Department of State Hospitals (SDSH) nor in an outpatient program.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Here, David Earl Myers was serving a one-year commitment that was due to expire October 15, 2020. The district attorney filed a petition to extend her[2] commitment for one year. Because the extension trial did not begin prior to Myers's scheduled release date on her commitment, Myers was released from SDSH's custody pursuant to *Cobb*.

Myers's extension trial subsequently began August 23, 2021. On August 31, 2021, the superior court found that she continued to meet MDO criteria, ordered her commitment extended for one year, and remanded her back into the custody of SDSH. At that point, Myers had been out of custody and not on outpatient status for over 10 months. She was thereafter in the custody of SDSH for less than seven weeks prior to October 15, 2021.

The pertinent question on appeal is when Myers's one-year extension on her commitment began. Myers argues that her extended commitment runs from the ending date of her previous commitment: October 15, 2020. The Attorney General argues that it runs from the date the trial court remanded Myers back into custody after finding she continued to be an MDO: August 31, 2021. The Attorney General contends Myers's release from custody pursuant to *Cobb* should not be credited toward her term of extended commitment just as time spent on outpatient status would not be credited under section 2972, subdivision (c). This — the Attorney General asserts — ensures that the new commitment consists of a full year of mental health treatment, thereby effectuating the purpose of the statute.

Based on the plain language of section 2972, subdivision (c), we agree with Myers. Section 2972, subdivision (c) states the commitment "shall be for a period of one year from the date of termination of . . . [the] previous commitment." Although time

---

[2] According to the writ petition, Myers "prefers female pronouns and the name 'Susie Denise Myers.' " Both the petition and the Attorney General's informal response thereto used the pronouns "she" and "her" to refer to Myers. We will do the same in this opinion. (See, e.g. *People v. Best* (2020) 49 Cal.App.5th 747, 751-752, fn. 1.)

spent on outpatient status is listed in that subdivision as time that "shall not be credited toward the [MDO's] . . . term of extended commitment" (*ibid.*), time spent out of custody and not on outpatient status, i.e., a release pursuant to *Cobb*, is not.

## BACKGROUND

In 2001, Myers pled guilty to annoying or molesting a child under 18 years of age (§ 647.6, subd. (c)(1)) and was committed to state prison. She was subsequently diagnosed with bipolar I disorder and pedophilic disorder and committed as an MDO. Myers received inpatient mental health treatment. Her commitment was set to expire on October 15, 2020. On September 8, 2020, the People filed a petition to extend her commitment. At the September 30, 2020 hearing, the superior court set trial for November 16, 2020.

On October 6, 2020, Myers moved for release pending trial, arguing that the extension petition was "filed so late as to render her unable to prepare for trial prior to the expiration of commitment." On October 16, 2020, citing *Cobb*, the superior court ordered Myers released from the custody of SDSH pending trial. During her release, which lasted until August 31, 2021, Myers "was not under the jurisdiction of [S]DSH"; "was not under the jurisdiction of [S]DSH's Conditional Outpatient Treatment Program (CONREP)"; and "was no longer a client of the [S]DSH system."

Trial by jury was waived. Myers's court trial began — after multiple continuances and time waivers — on August 23, 2021. On August 31, 2021, the superior court found Myers continued to meet MDO criteria and ordered her commitment extended for one year from October 15, 2020 to October 15, 2021.

On October 7, 2021, the People filed a motion asking the superior court to change the start and end dates of Myers's recommitment to August 31, 2021 and August 31, 2022, respectively. The People emphasized that, absent this modification and "contradictory to the legislative intent of the MDO statute," (1) Myers's time on *Cobb* release would essentially be credited toward her recommitment term; and (2) she would

only be in the actual custody of SDSH from August 31, 2021, to October 15, 2021. A hearing was held on October 12, 2021. The court granted the People's motion on October 14, 2021. Noting the "unusual situation," the court determined that "the time period for which . . . Ms. Myers was not in some type of custodial facility or under the direct control of the state in some fashion does not count against the People."[3]

On November 23, 2021, Myers filed in this court a "PETITION FOR WRIT OF MANDATE, PROHIBITION, OR OTHER APPROPRIATE RELIEF." (Boldface omitted.) She asked us to issue a writ directing the superior court to vacate the October 14, 2021 order on four grounds. First, that the People's motion was one for reconsideration and subject to Code of Civil Procedure section 1008, but the People failed to comply with the statute's procedural requirements.[4] Second, that the court lacked jurisdiction to reconsider the August 31, 2021 order because the reconsideration motion was not timely filed. Third, that Myers did not receive adequate notice or due process. Fourth, that the plain language of section 2972, subdivision (c) did not permit the court to change the original dates of her recommitment.

In an "INFORMAL RESPONSE TO PETITION FOR WRIT OF MANDATE" (boldface omitted) filed on February 14, 2022, the Attorney General argued that the

---

[3] The People had filed another extension petition on September 27, 2021, and Myers had filed a demurrer thereto on October 4, 2021. On October 14, 2021, following the court's ruling on the People's motion, both the petition and the demurrer were deemed moot.

[4] "Code of Civil Procedure section 1008 governs motions for reconsideration of prior orders. It provides that 'any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order.' [Citation.] 'The name of a motion is not controlling, and, regardless of the name, a motion asking the trial court to decide the same matter previously ruled on is a motion for reconsideration under Code of Civil Procedure section 1008.' [Citation.]" (*J.W. v. Watchtower Bible & Tract Society of New York, Inc.* (2018) 29 Cal.App.5th 1142, 1171.)

recommitment dates set forth in the August 31, 2021 order were erroneous and the court retained jurisdiction under Code of Civil Procedure section 473, subdivision (d) to correct them.[5, 6] The Attorney General contended:

> "As to the statutorily-set dates, the [MDO] statute's purpose is to ensure that the new commitment result[s] in a year for treatment. The statute's text contemplates that new year will commence at the end of the prior commitment — because that text does not allow interruption between (1) a prior commitment and (2) the commencement of a new commitment. However, there has been a judicial determination that, as a matter of due process, literal terms of the text at times must not be followed — so a person is entitled to an interruption in treatment via release at [the] end of one commitment, pending trial on the new commitment. (*Cobb*, *supra*, 48 Cal.4th at pp. 250-251, 252-253.) Reconciling the statute's purpose with *Cobb*'s judicial revision of the statutory text, the statute must require the new one-year commitment to commence on the date that would result in a new, one-year of treatment. Thus, when there has been the judicially-required interruption of custodial treatment prior to the new commitment, the statute's purpose requires that the new one-year commitment commence[s] on the day that custodial treatment resumes after interruption. [¶] . . . [¶]

> "Per the text, 'The commitment shall be for a period of one year from the date of termination of . . . a previous commitment . . . .' (§ 2972, subd. (c)). But it is understood that such language is construed according to the statutory purpose of ensuring a full year available for custodial treatment. For example, by statute, 'time spent on outpatient status' does 'not count as actual custody,' and thus does not count 'toward the person's term of extended commitment.' (§ 2972, subd. (c).) It thus has been recognized that a 'petition does not need to be filed in order to extend an

---

[5] Code of Civil Procedure section 473, subdivision (d) provides:

"The court may, upon motion of the injured party, or its own motion, correct clerical mistakes in its judgment or orders as entered, so as to conform to the judgment or order directed, and may, on motion of either party after notice to the other party, set aside any void judgment or order." (See *Ames v. Paley* (2001) 89 Cal.App.4th 668, 672-673 [statute confirms a trial court's inherent power to correct clerical errors in judgments].)

[6] The Attorney General also argued that the People's motion was not "functionally a motion to reconsider [the court]'s August 31, 2021 ruling."

MDO's commitment unless the MDO has received a year of inpatient treatment.' (*People v. Morris* (2005) 126 Cal.App.4th 527, 544.)

"In this case, [Myers]'s prior commitment expired October 15, 2020. A new commitment did not take over; rather, at her request and under the rule of *Cobb*, she was unconditionally released until respondent ordered her remanded on August 31, 2021. [Citation.] As reconciled with *Cobb*'s due-process-based revision, the statute thus set the new, one-year commitment to begin on that date, and to expire 364 days later. Another reading of the statute, as revised by *Cobb*, would be absurd in light of the statutory purpose of ensuring another full year of custodial treatment." (Fn. omitted.)

## DISCUSSION

" 'Questions of statutory interpretation, and the applicability of a statutory standard to undisputed facts, present questions of law, which we review de novo.' [Citation.]" (*California State University, Fresno Assn., Inc. v. County of Fresno* (2017) 9 Cal.App.5th 250, 265.)

## I.  Pertinent law

### a.  *Overview of statutory construction*

"The court's role in construing a statute is to 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citations.] In determining the Legislature's intent, a court looks first to the words of the statute. [Citation.] '[I]t is the language of the statute itself that has successfully braved the legislative gauntlet.' [Citation.] [¶] When looking to the words of the statute, a court gives the language its usual, ordinary meaning. [Citations.] If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs. [Citations.]" (*People v. Snook* (1997) 16 Cal.4th 1210, 1215; accord, *California State University, Fresno Assn., Inc. v. County of Fresno*, *supra*, 9 Cal.App.5th at p. 266.)

"An exception exists to the plain meaning rule. A court is not required to follow the plain meaning of a statute when to do so would frustrate the manifest purpose of the legislation as a whole or otherwise lead to absurd results." (*Switzer v. Wood* (2019) 35

7.

Cal.App.5th 116, 129 (*Switzer*); accord, *People v. Popular* (2006) 146 Cal.App.4th 479, 484.) "However, the absurdity exception requires much more than showing that troubling consequences may potentially result if the statute's plain meaning were followed or that a different approach would have been wiser or better." (*Switzer*, at p. 129.) "Moreover, our courts have wisely cautioned that the absurdity exception to the plain meaning rule 'should be used most sparingly by the judiciary and only in extreme cases else we violate the separation of powers principle of government. [Citation.] We do not sit as a "super-legislature." [Citation.]' [Citation.]" (*Ibid.*; see *People v. Bell* (2015) 241 Cal.App.4th 315, 351-352 [" 'Each time the judiciary utilizes the "absurd result" rule, a little piece is stripped from the written rule of law and confidence in legislative enactments is lessened. . . .' "].)

     b. *Overview of MDO Act*

"Enacted in 1985, the MDO Act requires that an offender who has been convicted of a specified felony related to a severe mental disorder and who continues to pose a danger to society receive appropriate treatment until the disorder can be kept in remission." (*People v. Harrison* (2013) 57 Cal.4th 1211, 1218.) "[I]t has 'the dual purpose of protecting the public while treating severely mentally ill offenders.' [Citation.]" (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1122.) " 'The act addresses treatment in three contexts — first, as a condition of parole [citation]; then, as continued treatment for one year upon termination of parole [citation]; and finally, as an additional year of treatment after expiration of the original, or previous, one-year commitment [citation].' [Citation.]" (*Cobb*, *supra*, 48 Cal.4th at p. 251.)

"An initial MDO commitment occurs as a condition of parole and is governed by section 2962." (*People v. Harrison*, *supra*, 57 Cal.4th at p. 1218; accord, *Allen*, *supra*, 42 Cal.4th at p. 99.) Before the initial commitment expires, "the district attorney may petition to extend that commitment by one year." (*Allen*, at p. 99, citing § 2970; see § 2972, subd. (e); see also *Allen*, at p. 95 [MDO "no longer falls under the jurisdiction of

8.

the MDO Act" where petition not timely filed].)  "To do so, the medical director of the state hospital, the community program director, or the [Secretary of the Department of Corrections and Rehabilitation] first 'shall submit' to the district attorney a written evaluation of the prisoner '[no] later than 180 days' before the prisoner's termination of parole or release, 'unless good cause is shown' for delay."  (*Allen*, at p. 99, quoting § 2970.)  The district attorney may only initiate a recommitment proceeding if that written evaluation states that "the prisoner's severe mental disorder is not in remission, or cannot be kept in remission without treatment."  (*People v. Marchman* (2006) 145 Cal.App.4th 79, 89.)

The trial on the petition "shall commence no later than 30 calendar days prior to the time the person would otherwise have been released, unless the time is waived by the person or unless good cause is shown."  (§ 2972, subd. (a)(2).)

"If the court or jury finds that the patient has a severe mental health disorder, that the patient's severe mental health disorder is not in remission or cannot be kept in remission without treatment, and that by reason of the patient's severe mental health disorder, the patient represents a substantial danger of physical harm to others, the court shall order the patient recommitted to the facility in which the patient was confined at the time the petition was filed, . . . or committed to [SDSH] if the person was in prison." (§ 2972, subd. (c).)

"The commitment shall be for a period of one year from the date of termination of parole or a previous commitment or the scheduled date of release from prison as specified in Section 2970.  Time spent on outpatient status, except when placed in a locked facility at the direction of the outpatient supervisor, shall not count as actual custody and shall not be credited toward the person's maximum term of commitment or toward the

9.

person's term of extended commitment."[7] (§ 2972, subd. (c); see *Allen, supra*, 42 Cal.4th at p. 103 ["These provisions clearly reflect the Legislature intended the MDO's maximum term of commitment to be one year . . . ."].)

Thereafter, the district attorney may annually petition to extend the MDO's commitment in one-year increments. (*Allen, supra*, 42 Cal.4th at pp. 94, 103; see § 2972, subd. (e).) " '[A] prisoner could conceivably be "treated" for the rest of his life as there is no limit on the number of times he may be recommitted to an inpatient facility.' [Citation.]" (*Allen*, at p. 103.)

c. *The* Cobb *decision*

The California Supreme Court issued *Cobb* on March 8, 2010. In that case, Cobb was civilly committed as an MDO in 2005 as a parole condition. (*Cobb, supra*, 48 Cal.4th at pp. 246-247.) On March 6, 2006, the district attorney filed a petition for continued treatment in advance of a May 27, 2006 parole termination date. (*Id.* at p. 247.) However, a trial on the petition did not begin at least 30 days before Cobb was scheduled to be released. (*Id.* at p. 247; see § 2972, subd. (a)(2).) Instead, the trial commenced on June 19, 2006, 23 days after the cutoff. (*Cobb*, at pp. 247, 251.) On June 22, 2006, the jury found that Cobb continued to meet MDO criteria, and his commitment was extended. (*Id.* at p. 249.)

On appeal, Cobb argued that he was denied due process because he had remained confined while his extension trial was continued — without good cause — beyond his scheduled release date. (*Cobb, supra*, 48 Cal.4th at p. 246.) Division Two of the Fourth Appellate District affirmed the recommitment order. (*Id.* at p. 249.) The appellate court, which assumed the absence of good cause, concluded that Cobb was not denied due process because (1) he "had notice and an opportunity to be heard when he was initially

---

[7] Placement on outpatient status is generally governed by section 1600 et seq. (See § 2972, subd. (d).)

found to be an MDO" in 2005 (*id.* at p. 251); and (2) " '[t]his notice and opportunity to be heard' " was " 'constitutionally sufficient to allow [him] to be confined — even after his . . . release date — until the end of [an extension] trial' " (*ibid.*). The Supreme Court rejected this reasoning. (See *id.* at pp. 251-252). It held:

> "[W]ithout a time waiver or good cause, section 2972 does *not* permit continued confinement when an extension trial does not begin before the scheduled release date. 'As we explained in *Allen*, *supra*, 42 Cal.4th 91, if an extension petition is not filed before the current commitment ends, the defendant is no longer subject to constraint under the [MDO Act]. If a petition is filed before the expiration date, but too late to allow a reasonable time for trial preparation,' the defendant may be entitled to release pending trial on the extension petition." (*Cobb*, *supra*, 48 Cal.4th at p. 252, fn. omitted.)

Nevertheless, the Supreme Court affirmed the judgment (*Cobb*, *supra*, 48 Cal.4th at p. 253), finding (1) the superior court retained jurisdiction to try the petition (*id.* at pp. 249-250, 253); and (2) Cobb's confinement did not affect the validity of the eventual extension order (*id.* at p. 253).

## II. Analysis

Section 2972 was enacted in 1986. (See Stats. 1986, ch. 858, § 7.) Since its inception, subdivision (c) has stated: "The commitment shall be for a period of one year from the date of . . . a previous commitment . . . ." Therefore, as recognized in the superior court's original August 31, 2021 ruling, section 2972, subdivision (c) requires the one-year extension of Myers's commitment to commence on October 15, 2020.

The Attorney General contends that, in the situation here, in which Myers was released from custody pending trial pursuant to *Cobb*, such a conclusion frustrates the purpose of the statute: to ensure that a recommitment results in "a full year available for custodial treatment." The Attorney General further argues that this purpose and *Cobb* — in tandem — "require the new one-year commitment to commence on the date that would result in a new, one-year of treatment."

11.

Since its amendment in 2000 (see Stats. 2000, ch. 324, § 3), section 2972, subdivision (c) has detailed a single qualification: "Time spent on outpatient status . . . shall not count as actual custody and shall not be credited toward . . . the person's term of extended commitment." There is nothing in the record demonstrating that Myers was placed on outpatient status after her prior commitment expired on October 15, 2020.[8] For us to find that a *Cobb* release — i.e., release from custody, but not on outpatient status — should not be credited toward *Myers's* term of extended commitment would require us to insert into subdivision (c) an exception not included in the statute. (See *People v. Standish* (2006) 38 Cal.4th 858, 870 [" '[W]here exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed' unless a contrary legislative intent is evident."]; *Estate of Griswold* (2001) 25 Cal.4th 904, 917 ["We may not, under the guise of interpretation, insert qualifying provisions not included in the statute."].) "[O]ur function is not to judge the wisdom of the statute, and we are not empowered to insert what a legislative body has omitted from its enactments." (*Switzer*, *supra*, 35 Cal.App.5th at p. 130.)

As previously noted, *Cobb* was issued in 2010. Besides holding that due process precludes continued confinement when the extension trial does not begin before the MDO's scheduled release date (*Cobb*, *supra*, 48 Cal.4th at p. 252), it held that a trial court did not lose jurisdiction to hold an extension trial if the timing of the trial did not

---

[8] For this reason, we find the Attorney General's reliance on *People v. Morris* (2005) 126 Cal.App.4th 527 unavailing. In that case, Morris spent the entirety of his one-year commitment term on outpatient status. Three days after his commitment expired, the People filed an extension petition. The issue before Division One of the Fourth Appellate District was whether the petition had to be filed before the end of Morris's previous commitment per section 2972. (*Morris*, at p. 533.) The appellate court held that — because Morris had been on outpatient status — the applicable statutory scheme was not section 2972 but rather section 2972.1 (*Morris*, at p. 533), which "provides a separate set of procedures applicable to MDO's who have received a year of outpatient treatment" (*id.* at p. 537) and "does not require the People to file a petition for recommitment in order to continue an MDO's treatment" (*id.* at p. 533).

comport with the 30-day rule of section 2972, subdivision (a)(2) (*Cobb*, at pp. 249-250). Hence, an extension trial may take place (and an order for recommitment issue) not only after the termination of an MDO's previous commitment but also during the period an MDO is unconditionally released pending said trial. However, while the Legislature has amended section 2972 twice since 2010 (see Stats. 2012, ch. 24, § 40; Stats. 2019, ch. 9, § 11), it left intact subdivision (c)'s language that unambiguously aligns a recommitment's start date with the prior commitment's end date. (See *People v. Licas* (2007) 41 Cal.4th 362, 367 [" '[T]he Legislature is deemed to be aware of existing laws and judicial decisions in effect at the time legislation is enacted and to have enacted and amended statutes " 'in the light of such decisions as have a direct bearing upon them.' " ' "].) In addition, "[t]he Legislature could easily have chosen to insert a[nother] qualifying term" (*Greiner v. Keller* (2019) 36 Cal.App.5th 332, 337) — e.g., when there is time spent on outpatient status outside of a locked facility *and/or on unconditional release pending trial*, the recommitment is tolled therefor — "but it did not" (*ibid.*). (See *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349 [" 'We must assume that the Legislature knew how to create an exception if it wished to do so . . . .' "].)

The plain language of section 2972, subdivision (c) does not support the Attorney General's position and it is for the Legislature to amend the statute to address the issue, not the courts.[9] Hence, absent legislative intervention, it is imperative that district attorneys and other responsible parties ensure not only that recommitment petitions are timely filed (*Allen*, *supra*, 42 Cal.4th at p. 108), but that the trials on those petitions occur in an expeditious fashion.

---

[9] Given our disposition, we need not address Myers's other arguments. (See *ante*, at p. 5.)

### III. Conclusion

Under section 2972, as constituted, Myers's one-year recommitment term commenced on October 15, 2020, even though the superior court's order to that effect was not issued until August 31, 2021, and Myers had been out of SDSH's custody for over 10 months. Because of the timing, Myers was essentially recommitted for less than seven weeks. Since it is impossible for 180 days to elapse between August 31, 2021, and October 15, 2021, the People may be forestalled from filing an extension petition. (See § 2970; *People v. Marchman*, *supra*, 145 Cal.App.4th at p. 89.) In other words, pursuant to the plain language of section 2972, subdivision (c), Myers — a longstanding MDO whose severe mental health disorder was found not to be in remission and who represents a substantial danger of physical harm to others by virtue of her condition — could feasibly be discharged from constraint under the MDO Act because of the timing of the filing of the extension petition and the timing of the trial on that petition.

### DISPOSITION

Myers's writ petition is granted. Let a writ issue directing the Kern County Superior Court to (1) vacate its October 14, 2021 order granting the People's motion to change the start and end dates of Myers's recommitment to August 31, 2021, and August 31, 2022, respectively; (2) enter a new and different order denying this motion; and (3) reinstate its August 31, 2021 order that recommitted Myers for a one-year period commencing on October 15, 2020.

DETJEN, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


SNAUFFER, J.

14.